43735. JEFFERSON v. THE STATE.
(353 SE2d 468)

GREGORY, Justice.

Appellant, Lawrence Jefferson, was convicted of felony murder during the commission of an armed robbery, and sentenced to death. He now appeals.[1] We affirm.

---

[1] Jefferson was sentenced to death on March 9, 1986. A motion for new trial was filed on March 31, and amended on June 18, 1986. The motion was heard on June 20, 1986, and denied on that date. A notice of appeal was filed July 10, 1986, and the case was docketed in this court on July 31, 1986. The case was orally argued October 20, 1986.

*Facts*

Soon after 4:00 p.m. on May 1, 1985, Jefferson and co-worker Ed Taulbee quit work for the day, and went to Lake Allatoona in Taulbee's car to do some fishing. Later that evening, Jefferson returned home, alone, in Taulbee's car.

A neighbor dropped by and observed clothes soaking in Jefferson's bathtub and discovered that Jefferson's wallet contained some $100 in cash, although he had not yet cashed his paycheck. The neighbor testified that Jefferson told him "his little fat buddy was dead."

Another neighbor testified that he took Jefferson to Lake Allatoona later that night, and that Jefferson disappeared into some woods and returned a few minutes later carrying a fishing pole and tackle box. Next, he took Jefferson to an automatic teller machine where Jefferson, asking whether it took "pictures," put on a straw hat and sunglasses and attempted to make a cash withdrawal.

Jefferson subsequently gave Taulbee's bank card to a third neighbor and told her to get rid of it. It was recovered from the neighbor's window air-conditioning unit.

On the morning of May 2, 1985, Taulbee's body was discovered lying face down in some woods near Lake Allatoona. A large log lay across his head, and two large wooden sticks lay nearby, one of which was shattered and had hair and blood on it. The victim's pockets were empty except for his paycheck receipt.

Jefferson admitted to the police that he owed the victim some money, and, although he denied killing him, he stated that "[Taulbee] did not need to be around other people, that he wanted to be executed, and that he wanted to be put to sleep."

The sufficiency of the evidence is not questioned on appeal, and we find that it supports the conviction. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

*Enumerations of Error*

1. In his 7th and 8th enumerations of error, Jefferson contends the trial court should have granted his challenges to the grand and petit jury arrays.

The racial percentages of the jury lists are essentially the same as those dealt with in *Cook v. State*, 255 Ga. 565 (11) (340 SE2d 891) (1986).[2] The defendant's contentions regarding comparative disparity

---

[2] As we noted in *Cook*, an evaluation of the Cobb County list was complicated by the large number of unknowns on the list. We observed that a sampling was conducted of a randomly-selected portion of the unknowns on the list in an attempt to estimate the true

were dealt with in *Cook*, and we find no error in the trial court's finding that the Cobb County jury lists meet constitutional standards with regard to race.

Jefferson also contends that young persons are underrepresented on the lists. His evidentiary presentation was somewhat vague as to what group of young persons might constitute a cognizable, underrepresented class, and his evidence related, variously, to persons between the ages of 18 and 30, 18 and 24, and 25 and 34. The trial court found as a matter of fact that Jefferson failed to establish the cognizability of any group of young persons, and the record supports this finding. See *Parks v. State*, 254 Ga. 403 (6) (330 SE2d 686) (1985).

The trial court did not err by denying the defendant's jury challenges.

2. In his 1st enumeration, Jefferson contends that three prospective jurors were improperly excused for bias against the death penalty. Their answers, he argues, failed to meet the standard for exclusion announced in *Wainwright v. Witt*, 469 U. S. ___ (105 SC 844, 83 LE2d 841) (1985).

As has been pointed out, " 'determinations of juror bias cannot be reduced to question-and-answer sessions which obtain results in the manner of a catechism.' *Wainwright v. Witt*, supra. Often, the answers of a prospective juror will to some degree be contradictory. [Cit.]" *Curry v. State*, 255 Ga. 215, 220 (336 SE2d 762) (1985).

Prospective juror Newkirk at first testified that she could not "honestly" say whether she was conscientiously opposed to capital punishment, and would not automatically vote against a death sentence. She subsequently testified, however, that although she would try to be fair and impartial on the question of sentence, she was "in general" opposed to the death penalty, she would "just hate" to consider it, and her feelings about the death penalty would "substantially impair" the performance of her duties as a juror. See *Alderman v. State*, 254 Ga. 206, 207 (327 SE2d 168) (1985). When asked by the defense whether she could vote for a death sentence, she stated that she hated to give a yes or no answer, but if pressed would say no; if given a choice as to sentence, she "guess[ed]" she would "say life."

---

racial composition of the racial unknowns. More recently, a more complete identification procedure has been undertaken, so that at the present time approximately 95% of the persons on the list have been racially identified. This most recent attempt has generated slightly different racial composition percentages than those purportedly identified in *Cook*, and the present testimony is that blacks are underrepresented by 1.9% absolute and 47.9% comparative on the grand jury list, and by 1.2% absolute and 30.9% comparative on the traverse jury list. These new figures are illustrative of the caveats we noted in *Cook*, supra at 571-572, and we find here, as in *Cook*, that the comparative disparities shown, although not irrelevant, are insufficient to establish any constitutional violation.

We cannot agree with the defendant's argument that this prospective juror merely expressed "qualms" about capital punishment, see *Alderman v. State,* supra; nor can we agree that the trial court erred by excusing the juror.

Prospective juror Williamson equivocated about her ability to impose a death sentence, saying at first that although her present feeling was that she could not, she could "change her mind," particularly if the victim were a member of her family or someone she "loved very deeply." However, she finally stated, "I wouldn't want him to have the death penalty. I don't think I could live with it if I sentenced somebody to the death penalty . . . I wouldn't want to make that decision."

The issue of this juror's excusal for bias against the death penalty is within the deference due the trial judge's determination, and the juror was properly excused under the *Wainwright v. Witt* standard.

After prospective juror Beck testified that he was conscientiously opposed to capital punishment, he was asked if he would automatically vote against the imposition of a death sentence no matter what the evidence might show, and he answered, "Yes sir, I believe I would." There was no further voir dire on the point by either side.

We cannot agree with Jefferson's contention that Beck's testimony was too "equivocal, uncertain and qualified" to justify his excusal. See *Castell v. State,* 250 Ga. 776 (7 b) (301 SE2d 234) (1983). The juror's excusal was proper.

3. One prospective juror, asked whether she had formed and expressed an opinion with respect to the defendant's guilt, answered, "I don't like the appearance of the accused."

Jefferson contends in his 3rd enumeration that this juror should have been excused on the ground that she was prejudiced and biased against the defendant. However, the defendant did not object to the juror on this ground at trial,[3] and in view of her testimony that she had formed and expressed no opinion as to the guilt or innocence of the defendant, and could be fair and impartial, the trial court did not err by failing to excuse her. *Spivey v. State,* 253 Ga. 187 (6 d) (319 SE2d 420) (1984).

4. In his 5th enumeration, the defendant contends that OCGA § 15-12-164 (a) (4), which specifies the statutory voir dire question to be asked concerning conscientious objection to the death penalty, does not state the proper test for disqualification and is unconstitutional.

---

[3] The defendant's objection at trial related to the juror's testimony that she was a manic-depressive and was on medication. The court denied this challenge, noting it had "no reason to believe that she will not be able to appropriately deal with the physical malady by appropriate doses of medication."

OCGA § 15-12-164 (a) provides that "on voir dire examination in a felony trial, the jurors shall be asked the following questions . . . [including] (4) 'Are you conscientiously opposed to capital punishment?' If the juror answers this question in the negative, he shall be held to be a competent juror."

As we pointed out in *Curry v. State,* supra at 219, "an affirmative answer to the question would, by itself, disqualify no juror, and the purpose of further voir dire is precisely to clarify the juror's views on capital punishment."

In any event, inasmuch as no juror in this case was excused simply because he answered the question in the affirmative (or was declared competent in all respects simply because he answered in the negative, compare, e.g., *Pope v. State,* 256 Ga. 195 (7 e) (345 SE2d 831) (1986)), Jefferson lacks standing to challenge the constitutionality of OCGA § 15-12-164 (a) (4). *Stover v. State,* 256 Ga. 515 (350 SE2d 577) (1986).

5. The failure to give a requested instruction is not reversible error where the charge given substantially covers the same principles of law. *Fox v. State,* 238 Ga. 387 (2) (233 SE2d 341) (1977). Enumeration 2 is without merit.

6. The trial court did not err by refusing to exclude the testimony of a state's witness for his alleged violation of the rule of sequestration. Exclusion of testimony simply is not an appropriate remedy for a violation of the rule. See OCGA § 24-9-61; *Hicks v. State,* 256 Ga. 715 (12) (352 SE2d 762) (1987). A violation of the rule goes to the credibility of the witness, and renders him amenable to the court for contempt in disobeying the court's order, but does not render him incompetent or permit the exclusion of his testimony. *May v. State,* 90 Ga. 793, 800 (2) (17 SE 108) (1892); *Shelton v. State,* 111 Ga. App. 351 (1) (141 SE2d 776) (1965); *Thomas v. State,* 7 Ga. App. 615 (1) (67 SE 707) (1910).

Contrary to the defendant's contention, the trial court did instruct the jury that violations of the rule could be considered in evaluating the credibility of witnesses. Jefferson's 4th enumeration is without merit.

7. Contrary to the defendant's 6th enumeration, the trial court did not err by allowing the state to buttress the testimony of two of its witnesses by proving prior consistent statements. *Cuzzort v. State,* 254 Ga. 745 (334 SE2d 661) (1985).

8. In his 9th and 10th enumerations of error, Jefferson complains of certain evidence presented by the state at the sentencing phase of the trial, specifically, state's exhibits 75 and 81, pertaining to prior criminal activity by the defendant. Resolution of these two enumerations depends in large part upon an analysis of other evidence presented at the sentencing phase of the trial. Therefore, in subdivi-

sion (a), below, we set forth a summary of the pertinent evidence, and, in subdivision (b), we explain why we find no reversible error.

(a) Louisville, Kentucky police officer William Hubble testified that on November 2, 1979, his home was burglarized. Several pistols were taken, including a nickel-plated .45 calibre Colt revolver with black pearl grips. It was eventually discovered that a juvenile had committed the burglary and had sold the guns.

The nickel-plated .45 was recovered five days later, on November 7, 1979, after having been used in several armed robberies on that day.

Cosby Powell, manager of a Bonded gas station in Louisville, testified that early in the afternoon of November 7, 1979, the defendant in this case, Lawrence Jefferson, pointed a "chrome-plated .45" at his face and said, "This is a holdup." Jefferson was accompanied by three other black males who stood by in the immediate vicinity without taking overt part in the robbery.

Mrs. Rosalynn Gail Hart, cashier at a Gulf station in Louisville, testified that later that same afternoon she observed Lawrence Jefferson pumping gas into an automobile. Some time thereafter, another black male pointed a "silver gun" with a "dark handle" at her and demanded her money. She pulled the alarm, ducked under the counter, and called her manager. The man fired the gun and left.

Detective Hurst of the Louisville police department was investigating these two robberies and a third at another Bonded station two miles from the Gulf station when he received word that an automobile fitting the description of the car reportedly used by the robbers had been stopped, and he proceeded to the scene. Inside the car were four black males, including Lawrence Jefferson and the person later identified by Mrs. Hart as the man who had pulled the gun on her. The .45 revolver belonging to officer Hubble was recovered from the automobile, and sums of money were recovered from several of the occupants, including $180 from Jefferson.

In addition to testifying to the foregoing, detective Hurst was questioned about state's exhibit 81, consisting of three bench warrants issued for Jefferson from the district court of Jefferson County, Kentucky — one issued in connection with a traffic offense (failure to maintain insurance), one for nonsupport, and one relating to a burglary charge. Hurst explained that bench warrants generally are issued in response to a defendant's failure to appear in answer to the charges.

On cross-examination by the defense, Hurst was shown a document establishing that Jefferson had received a probated sentence on the burglary charge on a date preceding by several months the issuance of the bench warrant. Hurst explained that the district court handles misdemeanor offenses and that Jefferson had probably been

allowed to plead guilty in exchange for having the burglary charge treated as a misdemeanor, and that the bench warrant would have been issued for Jefferson's noncompliance with the terms and conditions of his probation.

State's exhibit 75 includes a copy of a six-count indictment. The first five counts charge four defendants, including Jefferson, with three counts of armed robbery, one count of receiving stolen property (officer Hubble's .45 pistol), and one count of possession of LSD, and the last count charges one of Jefferson's co-defendants with being a repeat offender.

The exhibit shows on its face that the grand jury no-billed the possession-of-LSD count (Count 5).

Exhibit 75 also includes a copy of Jefferson's guilty plea on Count one, charging him with the robbery of the Bonded station managed by Cosby Powell. The plea document shows that, in exchange for the guilty plea, the charges against Jefferson contained in Counts 2, 3 and 4 were dropped.

(b) Jefferson argues that the trial court erred by allowing the state to introduce those portions of state's exhibits 75 and 81 containing references to unproven criminal charges.

The only objection tendered by the defendant at trial to state's exhibit 75 was that it was not properly exemplified. This objection was properly overruled. Jefferson did not complain that the exhibit contained extraneous and irrelevant material, or move for the excision of any portion of the document.

The mere fact that a defendant has been charged with a crime has little or no probative value and can be highly prejudicial. However, the state did not in this case simply offer evidence that the defendant had been indicted; in addition, *four* witnesses gave testimony relating to the crimes charged in counts 1 through 4 of the indictment. As we held in *Devier v. State*, 253 Ga. 604 (9) (323 SE2d 150) (1984), a prior crime may be proven in aggravation despite the lack of a conviction, so long as there has not been a previous acquittal. See *Fugitt v. State*, 256 Ga. 292 (1 d) (348 SE2d 451) (1986).

Counts 5 and 6 should have been deleted, but, absent a proper objection, we find no reversible error. Showing the jury one count plainly marked "no-billed" and another count not even charging this defendant with a crime did not result in a death sentence imposed as the result of passion, prejudice, or other arbitrary factor. OCGA § 17-10-35 (c) (1).

As for state's exhibit 81, the state explained to the court in the presence of the jury that it was offered solely to prove that the defendant came to Georgia while three Kentucky bench warrants were outstanding and to show his conduct in failing to appear in answer to the charges, insofar as that was relevant to his character, and not to

prove that he had actually committed the crimes referred to in the warrants. The court gave the jury limiting instructions consistent with the state's proffer, telling the jury that the exhibit was not being allowed in evidence "for the purpose of proving the truth of the charges that are contained in these documents . . . [but] only for the limited purpose" asserted by the state.

In view of the court's limiting instructions and the defendant's own evidence establishing that he had committed the only serious crime referred to in the bench warrants, i.e., the burglary, we find no error here.[4]

## Sentence Review

9. The jury found as statutory aggravating circumstances that the offense of murder was committed while the offender was engaged in the commission of another capital felony,[5] and that the offense of murder was outrageously or wantonly vile, horrible or inhuman in that it involved an aggravated battery to the victim. See OCGA § 17-10-30 (b) (2) and (b) (7).

Jefferson was convicted of murder during the commission of an armed robbery, and the evidence supporting the conviction supports the jury's § b (2) finding.

As for the § b (7) circumstance, the evidence shows that the defendant severely beat the victim in the face with a heavy stick, and then finished him off by crushing his skull with a log after he had fallen to the ground. The evidence supports the jury's finding. Compare *Conner v. State*, 251 Ga. 113 (3) (303 SE2d 266) (1983).

10. We do not find the sentence to have been imposed as the result of passion, prejudice or other arbitrary factor.

11. The sentence of death imposed in this case is neither excessive nor disproportionate, considering the crime and the defendant. OCGA § 17-10-35 (c) (3).

*Judgment affirmed. All the Justices concur.*

## On Motion for Reconsideration.

On motion for reconsideration, Jefferson raises three additional grounds for reversing his death sentence. Although these grounds are

---

[4] Where bench warrants refer to charged but unproven serious crimes, their probative value could be so outweighed by the danger of unfair prejudice that their introduction in aggravation would be improper despite limiting instructions. However, this is not such a case.

[5] The jury did not specify the supporting capital felony, but the only one charged was armed robbery. In these circumstances, absent any objection to the form of the verdict, the jury's finding is sufficiently clear to allow us to rationally review the verdict. See *Romine v. State*, 251 Ga. 208 (7) (305 SE2d 93) (1983).

now raised for the first time, they relate to matters we review under OCGA § 17-10-35, and we deem it appropriate to respond briefly to the motion.

A. Jefferson argues that since the jury failed to find intent to kill (having convicted him of felony murder) his death sentence is constitutionally excessive and disproportionate. See *Enmund v. Florida*, 458 U. S. 782 (102 SC 3368, 73 LE2d 1140) (1982). This contention is predicated on an assumption that *Enmund* proscribes the imposition of a death sentence in cases of felony murder. We do not so read *Enmund*. "*Enmund* holds that the Eighth Amendment forbids the imposition of the death penalty upon a defendant 'who aids and abets a felony in the course of which a murder is committed by others but who does not himself kill, attempt to kill, or intend that a killing take place or that lethal force be employed.'" *Allen v. State*, 253 Ga. 390, 395 (321 SE2d 710) (1984).

Here, as in *Walker v. State*, 254 Ga. 149, 160 (327 SE2d 475) (1985), the defendant "did not aid and abet a felony — he directly committed it. Furthermore, the murder here was not committed by others — [Jefferson] himself committed murder."

Thus, Jefferson's sentence does not, by reason of his conviction for felony murder, violate the Eighth Amendment.

B. Jefferson next argues that it is unconstitutional to allow the armed robbery to serve both as a basis for a defendant's conviction of felony murder and as a statutory aggravating circumstance, for in these circumstances the finding of a statutory aggravating circumstance fails to serve the narrowing function described in *Zant v. Stephens*, 462 U. S. 862 (103 SC 2733, 77 LE2d 235) (1983). See *Davis v. State*, 255 Ga. 588 (3 c) (340 SE2d 862) (1986).

Jefferson is incorrect, however, when he argues that "[e]very defendant convicted of felony murder will necessarily satisfy the requirements of the [§] b (2) statutory aggravating circumstance." Brief on Motion for Reconsideration, p. 4. Only if the underlying felony of the felony murder conviction is itself a capital felony, or aggravated battery, burglary, or arson in the first degree, will proof sufficient to establish felony murder also establish the § b (2) circumstance. See OCGA § 17-10-30 (b) (2). Hence, a "second plane" is established by the § b (2) circumstance, separating "from all [felony] murder cases those in which the penalty of death is a possible punishment." *Zant v. Stephens*, 250 Ga. 97, 99 (297 SE2d 1) (1982).

That the prerequisites of a possible death sentence may be satisfied by proof offered at the guilt-innocence phase of the trial is no bar to the imposition of a death sentence, nor an indication that a statutorily-defined aggravating circumstance is not "helping to distinguish cases in which the death penalty *is* imposed from the many cases in which it is *not*." *Phillips v. State*, 250 Ga. 336, 339 (297 SE2d 217)

(1982). Compare, e.g., *Romine v. State*, 256 Ga. 521, 528 (350 SE2d 446) (1986).

We cannot agree that the § b (2) circumstance fails reasonably to justify imposing a more severe sentence upon this defendant compared to others found guilty of murder or that he was sentenced to death based upon a circumstance that mitigates, rather than aggravates, his guilt. We agree that a lack of intent to kill is mitigating, but Jefferson was not eligible for a death sentence *"because* he lacked intent to kill," Brief on Motion for Reconsideration, p. 5., but because "[t]he offense of murder . . . was committed while the offender was engaged in the commission of another capital felony . . ." OCGA § 17-10-30 (b) (2) (and also because "[t]he offense of murder . . . was outrageously or wantonly vile, horrible, or inhuman in that it involved . . . an aggravated battery to the victim." OCGA § 17-10-30 (b) (7)).

In view of the two statutory aggravating circumstances present in this case, and the defendant's prior record of conviction for armed robbery, the jury was justified in imposing a death sentence.

C. In view of the foregoing we need not address Jefferson's claim that if the jury's § b (2) finding was constitutionally defective, the sentence would have to be reversed notwithstanding the valid § b (7) finding. See *Zant v. Stephens*, 462 U. S. 862, supra.

D. The Motion for Reconsideration is denied.

DECIDED MARCH 3, 1987 —
RECONSIDERATION DENIED MARCH 24, 1987.

*Kearns & Reeves, Ralph W. Kearns, Jr.,* for appellant.
*Thomas J. Charron, District Attorney, Michael J. Bowers, Attorney General, J. Michael Davis, Assistant Attorney General,* for appellee.

APPENDIX.

*Davis v. State*, 255 Ga. 598 (340 SE2d 869) (1986); *Roberts v. State*, 252 Ga. 227 (314 SE2d 83) (1984); *Berryhill v. State*, 249 Ga. 442 (291 SE2d 685) (1982); *Dick v. State*, 246 Ga. 697 (273 SE2d 124) (1980); *Amadeo v. State*, 243 Ga. 627 (255 SE2d 718) (1979); *Bowden v. State*, 239 Ga. 821 (238 SE2d 905) (1977); *Young v. State*, 237 Ga. 852 (230 SE2d 287) (1976); *Pulliam v. State*, 236 Ga. 460 (224 SE2d 8) (1976); *Dobbs v. State*, 236 Ga. 427 (224 SE2d 3) (1976); *Goodwin v. State*, 236 Ga. 339 (223 SE2d 703) (1976); *Moore v. State*, 233 Ga. 861 (213 SE2d 829) (1975).