S93P1262. LEDFORD v. THE STATE.
(439 SE2d 917)

BENHAM, Justice.
The defendant, J. W. Ledford, Jr. was convicted of the malice

murder of Dr. Harry Buchanan Johnston, Jr., as well as two counts of armed robbery, one count of burglary, and one count of kidnapping Dr. Johnston's wife, Antoinette.[1] The jury recommended that a sentence of death be imposed for the conviction of malice murder, and the trial court sentenced him to death. The trial court also sentenced the defendant to two consecutive life sentences and two twenty-year concurrent terms for the remaining offenses.

The defendant and victims were neighbors. At the time of the murder, the defendant was 20 years old and Dr. Johnston was 73. According to trial testimony, Dr. Johnston was "rather feeble." The evidence presented at trial shows that on January 31, 1992, the defendant came to the Johnston home, asking to speak to Dr. Johnston. Mrs. Johnston had previously seen her husband drive away in his truck with a passenger she was unable to identify. When she informed the defendant that Dr. Johnston was not at home, the defendant left, but returned approximately ten minutes later. This time the defendant asked Mrs. Johnston to have her husband come to his home that evening. Approximately ten minutes after the second visit, the defendant returned and forced his way into the Johnston home at knifepoint. Mrs. Johnston testified that he threatened to kill her, and demanded money and guns. Mrs. Johnston gave him the money from her purse. The defendant then pushed her throughout the house gathering up a shotgun, rifle and two pistols. He forced her on the bed and bound her wrists with a rope he had in his pocket. When Mrs. Johnston heard the door close, she managed to get up from the bed in time to see the defendant driving away in her husband's truck. Because her wrists were loosely tied together, she was able to sever the rope and telephone the sheriff's office.

The defendant was apprehended later that afternoon. Law enforcement officers subsequently discovered the body of Dr. Johnston near a small building located on the Johnston property. According to the pathologist who performed the autopsy, the victim had suffered either "one continuous or two slices to the neck" which destroyed virtually all the muscle and tissue on the left side of his neck, and nearly severed his head from his body. Additionally, the victim sustained a small knife wound in the back and a number of other knife wounds in the neck. There were no defensive wounds on the victim's hands. The pathologist testified that it took "a significant amount of force" to·

---

[1] The crimes occurred on January 31, 1992. The defendant was arrested that same day and tried November 9-14, 1992. The jury returned its verdict in the guilt-innocence phase of trial on November 13, 1992, and on November 14, returned a verdict recommending that the death penalty be imposed for the conviction of malice murder. The defendant's motion for new trial, filed December 4, 1992, was denied by the trial court on March 31, 1993. This appeal was docketed in this court on May 14, 1993, and orally argued on November 9, 1993.

inflict the wounds in question. Additionally, he opined that the victim bled to death, but lived approximately eight or nine minutes after the injuries were inflicted, in "an extremely painful" condition.

The defendant and victim shared the same blood type. However, based on an enzyme analysis, a GBI forensic serologist testified that the blood found on the defendant's clothing and the knife in his possession at the time of arrest was consistent with the victim's blood and could not have come from the defendant.

The day following his arrest the defendant sent word to officers that he wished to make a statement. After receiving warnings pursuant to *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966), the defendant stated that he had gone to Dr. Johnston's house to ask for a ride to the grocery store. Once in the truck, Dr. Johnston accused the defendant of stealing from him. Dr. Johnston returned to his home and told the defendant he wished to show him something on the property. Dr. Johnston then struck the defendant and unsnapped a knife pouch on his belt. The defendant drew his own knife and "stuck" the victim in the neck. The defendant stated that "[a]s I was pulling my knife back from sticking him, it went over and cut the . . . out of him." The defendant stated that he then dragged the body to the building where the victim was found and covered it up. He then went to Dr. Johnston's house, his knife still drawn, and demanded money from Mrs. Johnston. He tied her up, took money and four guns, and left in Dr. Johnston's truck. Shortly thereafter he pawned the shotgun and rifle.

Employees from two pawn shops identified the defendant as the person who pawned the guns in question on the day of the murder.

1. A rational trier of fact could have found the defendant guilty of the crimes charged beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. (a) The indictment against the defendant alleged that he committed a burglary in that he entered the victims' home with the intent to commit an armed robbery. The defendant argues that the indictment is unconstitutionally vague in that it failed to specify which of the two counts of armed robbery he was accused of committing. However, the record shows that the parties stipulated at a hearing that the armed robbery in question was the one specified in Count 4 of the indictment. As the defendant has not shown that he .was prejudiced or misled by this deficiency in the indictment, we find no reversible error. *State v. Eubanks*, 239 Ga. 483, 484 (238 SE2d 38) (1977).

(b) The defendant also argues that the indictment is unconstitutionally vague in that it failed to place him on notice of the acts used to support the charge of kidnapping. Where, as here, a defendant fails to show that he was "misled to his prejudice by any imperfection in the indictment [he] cannot obtain reversal of his conviction on this

ground." Id.

3. The trial court did not abuse its discretion in refusing to sever trials of the offenses relating to the separate victims in this case. *Stewart v. State*, 239 Ga. 588 (3) (238 SE2d 540) (1977).

4. (a) Prior to trial the defendant filed a motion for change of venue. Pursuant to USCR 19.2 (B), the trial court ordered that the trial take place in Murray County, where the crimes were committed, with a jury selected from Gordon County. The defendant maintains that the trial court's action was insufficient to protect his ability to receive a fair trial due to the pre-trial publicity in Murray County. However, we find no error because the defendant did not "make a substantive showing of the likelihood of prejudice by reason of extensive publicity." *Jones v. State*, 261 Ga. 665, 666 (409 SE2d 642) (1991).

(b) The defendant also argues that the trial court created the perception of adverse publicity in stating to the jury,

Now, ladies and gentlemen, the court has granted a partial change in venue in the case to assure a fair trial untainted by any pre-trial publicity.

However, the defendant failed to object to these remarks at trial, and any error relating to them will not be considered on appeal. *Martin v. State*, 262 Ga. 312 (2) (418 SE2d 12) (1992). Further, the trial court made these remarks in context of admonishing the jury to not "read, listen to or watch any media accounts of the case."

5. The trial court did not unduly restrict the defendant's voir dire examination of Juror Jones. The record shows that the state did not object to, and the trial court did not restrict, the defendant's questions with regard to mitigating circumstances. Rather, the state objected to the question of whether a death sentence was an appropriate penalty in cases of "first degree murder," on the ground that no such offense exists in this state.

6. The defendant argues that the trial court erred in excusing seven jurors on the ground that they were so opposed to the death penalty that they could not be impartial jurors, and in qualifying to serve five jurors whom the defendant argues showed a predisposition to automatically impose the death penalty.

We note that some of the answers given by each of these challenged jurors were equivocal, in response to the phrasing of the questions, the manner in which the questions were asked, and the distinctions which they asked the jurors to draw. "Often the answers of a prospective juror will to some degree be contradictory." *Jefferson v. State*, 256 Ga. 821 (2) (353 SE2d 468) (1987).

The party seeking exclusion of a juror need not demonstrate bias

with "unmistakable clarity." *Wainwright v. Witt*, 469 U. S. 412, 424 (105 SC 844, 83 LE2d 841) (1985). As the U. S. Supreme Court has recognized, "many veniremen simply cannot be asked enough questions to reach the point where their bias has been made 'unmistakably clear.' . . ." Id. at 426. It is because veniremembers "may not know how they will react when faced with imposing the death sentence, or may be unable to articulate, or may wish to hide their true feelings[,]" id. at 425, that deference must be paid to the trial court's determination of whether the views of a prospective juror will " 'prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath.' " Id. at 424; *Wade v. State*, 261 Ga. 105 (9) (401 SE2d 701) (1991).

(a) With regard to jurors Thomas, Buttrum, Hunt, Glass, Bohannon, Phillips, and Shumacher, the record supports the trial court's findings that each expressed a bias in opposition to the death penalty which would render him or her incapable of serving as an impartial juror in this case and in following the law as charged by the trial court. *Wade*, supra; *Witt*, supra; *Jefferson*, supra.

(b) We conclude that the trial court did not err in denying the defendant's challenges to jurors Erwin, McEntyre, Leonard, Wofford and Clance on "reverse-*Witherspoon*" grounds. See *Witherspoon v. Illinois*, 391 U. S. 510 (88 SC 1770, 20 LE2d 776) (1968). While there was some equivocation and contradiction in their answers to the question of whether they would "automatically" vote to impose the death penalty, the record supports the trial court's findings that each was capable of serving as an impartial juror and would both weigh the evidence in mitigation and consider seriously the option of imposing a life sentence. These findings are entitled to deference from this court. *Witt*, supra; *Taylor v. State*, 261 Ga. 287 (5) (404 SE2d 255) (1991).

(c) We have also examined the trial court's questioning of the veniremembers as to *Witherspoon* and "reverse-*Witherspoon*" grounds to determine if the court handled the questioning in an even-handed and unbiased manner, and we conclude that the trial court's questioning was appropriate under the circumstances of this case.

7. The trial court did not abuse its discretion in allowing GBI Agent Scott to remain in the courtroom after the rule of sequestration had been invoked, as the state demonstrated its need to have Scott assist in the presentation of evidence. *Childs v. State*, 257 Ga. 243 (11) (357 SE2d 48) (1987).

8. Following a hearing pursuant to *Jackson v. Denno*, 378 U. S. 368 (84 SC 1774, 12 LE2d 908) (1964), the trial court found the defendant's incriminating statements to police were voluntarily made after a knowing waiver of his *Miranda* rights. These findings are not clearly erroneous, and will not be disturbed by this court. *Lawton v. State*, 263 Ga. 168 (429 SE2d 921) (1993); *Carter v. State*, 257 Ga.

510 (3) (361 SE2d 175) (1987).

9. During the state's presentation of its case, a spectator spoke to a juror. The district attorney and defense counsel simultaneously brought this to the trial court's attention, and the court immediately sent the jury to the jury room. The court then called the spectator to the witness stand and asked her what she said to the juror in question. The spectator identified herself as the sister of the murder victim, and stated she had asked the juror only whether she was able to hear. The spectator stated that the juror nodded, but did not say anything.

The juror in question was then brought into the courtroom, and in response to the court's questioning stated that the spectator had asked her, "Honey, can you hear okay?" The juror stated that she did not know the spectator, and that this contact would not prevent her from being an impartial juror in the case.

Following a discussion with counsel, the trial court ordered the spectator removed from the courtroom.

The defendant argues that these circumstances tainted the trial of his case, and therefore the trial court erred in denying his motion for mistrial. We do not agree.

Where there is an improper communication to a juror,

> there is a presumption of harm and the burden is on the State to show the lack thereof. [Cits.] However, where the substance of the communication is established without contradiction, the facts themselves may establish the lack of prejudice or harm to the defendant. [Cit.]

*Jones v. State*, 258 Ga. 96 (366 SE2d 144) (1988).

The facts themselves show that the juror was unaware of the spectator's relationship to the murder victim, and that the communication was inherently innocuous. The trial court took the additional step of removing the offending spectator from the courtroom. Under these circumstances the trial court did not abuse its discretion in denying the motion for mistrial. *Nelson v. State*, 262 Ga. 763 (5) (426 SE2d 357) (1993). That the spectator and juror were not sworn before answering the questions of the court does not change this result.

10. The Unified Appeal Procedure does not violate the defendant's right to remain silent because it requires him to answer certain questions regarding his satisfaction with his attorney and the handling of his case. *Potts v. State*, 259 Ga. 96 (32) (376 SE2d 851) (1989); *Rogers v. State*, 256 Ga. 139 (13) (344 SE2d 644) (1986).

11. The defendant argues his trial must be reversed because he was not permitted to be present during bench conferences between counsel and the court. Without deciding whether, as the defendant

argues, an accused in a death penalty case has such a right, we note that the defendant has not shown to this court any instance in which he requested to be present and was denied such an opportunity.

12. The defendant's constitutional attack, relating to the order of closing arguments, was not raised at trial, and will not be considered on appeal. *Brantley v. State*, 262 Ga. 786 (11) (427 SE2d 758) (1993).

13. The defendant argues that the state purposefully withheld a scientific report of the results of DNA testing of the defendant's blood, in violation of OCGA § 17-7-211. The defendant maintains that the results of the DNA testing would have shown that the defendant's blood did not match any of the blood found at the scene.

As stated above, both the defendant and victim shared the same blood type, and additionally shared the same blood enzymes with the exception of one. A forensic serologist from the GBI testified that the results of the enzyme analysis showed that blood found on the defendant's clothing and knife was consistent with the victim's blood and could not have come from the defendant. On cross-examination, the witness testified that while a DNA analysis of the defendant's blood was made, the results were not included in the official report. The witness testified that because it could be concluded through enzyme analysis that all blood on the items tested was that of the victim and not the defendant, it was unnecessary to include the DNA analysis in the official report.

The record shows that the defendant received the scientific report in the possession of the state. OCGA § 17-7-211. The record does not show that the state had in its possession a copy of the DNA analysis which the defendant now seeks. The scientific report discoverable under the statute does not include the entire work product of the State Crime Lab. *Williams v. State*, 251 Ga. 749 (3) (312 SE2d 40) (1983); *Hartley v. State*, 159 Ga. App. 157 (2) (282 SE2d 684) (1981).

As for the defendant's argument that the state has withheld potentially exculpatory evidence, he has failed to show that there is a reasonable probability that had this evidence been disclosed to him, the outcome of his trial would have been different. *Nelson v. Zant*, 261 Ga. 358 (3) (405 SE2d 250) (1991).

14. The defendant maintains that the trial court erred in allowing the victim's wife to identify a photograph of the victim while in life on the ground that this prejudiced his right to a fair trial.

The general rule is that it is not error to admit a photograph of the victim while in life. *Norton v. State*, 263 Ga. 448 (6) (435 SE2d 30) (1993). However, the better practice is to not permit a victim's family member to identify the victim where other nonrelated witnesses are able to do so (see concurrence of Benham, J., in *Tharpe v. State*, 262 Ga. 110, 116 (416 SE2d 78) (1992)). Here the defendant did not object to the testimony of the victim's wife identifying the

photograph. Only at the close of the state's case when the state offered the photograph in evidence did the defendant object, and then on the ground that the photograph had "no probative value." Under these circumstances we find no reversible error.

15. The defendant argues that it was error to admit a photograph of the victim following death in which a hand is depicted positioning the victim's head for a camera angle of a wound. The defendant maintains that this is a "staged" photograph in violation of *Brown v. State*, 250 Ga. 862 (5) (302 SE2d 347) (1983). As this was a pre-autopsy photograph which did not meaningfully alter the "state" of the victim's body within the meaning of *Brown*, we find no error. *Taylor v. State*, 261 Ga. 287 (6) (c) (404 SE2d 255) (1991).

16. On direct examination the state asked the pathologist who had performed the autopsy on the murder victim to identify certain crime-scene photographs. The witness gratuitously stated, "Well, I'm a pathologist and this is rather sickening." The defendant did not object to this testimony. Rather, the witness proceeded to identify the photographs and in subsequent testimony stated, "Well, I've seen a lot of really bad things in the numerous types of autopsies I've seen . . . ." At this point the trial court interrupted the witness and asked counsel to approach the bench. The trial court then instructed the district attorney to inform the witness that he should not compare the victim's wounds with other wounds he had seen. Defense counsel did not request that these instructions be amplified or ask for additional remedies. The following day the defendant moved for a mistrial based on this testimony, but the trial court denied the motion. The motion for mistrial was untimely, and the trial court did not err in denying it. *Thaxton v. State*, 260 Ga. 141 (5) (390 SE2d 841) (1990); *Thomas v. State*, 256 Ga. 616 (4) (351 SE2d 453) (1987).

17. The defendant's failure to object to the testimony of an expert witness waives review of this issue. *Bruce v. State*, 259 Ga. 798 (387 SE2d 886) (1990). That the witness was called by the trial court does not, as the defendant suggests, impede his ability to object to allegedly improper testimony.

18. The defendant makes seven allegations of prosecutorial misconduct during cross-examination of witnesses, and opening and closing statements at trial.

(a) The defendant failed to object below to six of the instances complained of on appeal. We have held that the "contemporaneous objection rule cannot be avoided by characterizing trial occurrences as examples of prosecutorial misconduct." *Spencer v. State*, 260 Ga. 640 (9) (398 SE2d 179) (1990). Further, the state's remark during its opening statement that "this quiet peaceful lifestyle enjoyed by [the victims] came to a screeching halt [when] J. W. Ledford, Jr., that man right there, came into their lives," is not the sort of victim-im-

pact statement disapproved by this court in *Sermons v. State,* 262 Ga. 286 (417 SE2d 144) (1992) and *Moore v. State,* 263 Ga. 11 (427 SE2d 766) (1993). Rather, see *Ward v. State,* 262 Ga. 293 (6) (g) (417 SE2d 130) (1992).

The test on review for allegedly improper arguments by the state to which the defense did not object at trial is "whether the improper argument in reasonable probability changed the result of the trial." *Todd v. State,* 261 Ga. 766 (2) (410 SE2d 725) (1991). We conclude that any harm done in the remaining instances enumerated by the defendant is insufficient to overcome the procedural default. Id.

(b) The defendant argues the prosecuting attorney made an impermissible comment on his silence during argument at the conclusion of the penalty phase by asking the jury

> when and where has [the defendant] shown remorse during the course of this — up until today. I mean, when and where has he ever shown remorse during the course of this whole, horrible episode.

Defense counsel interrupted the argument and, after requesting permission to approach the bench, moved for a mistrial on the ground that the prosecuting attorney was making a comment on the defendant's failure to testify. The attorney for the state responded that his reference was to the statement the defendant had made to police and the fact that he had shown no remorse at that time. The trial court then instructed the district attorney not to comment on the defendant's failure to testify, but to direct any remarks to the content of the defendant's statement.

When the district attorney resumed his argument, he limited his statements in accordance with the trial court's instructions. The defendant did not object further to the state's argument or ask for curative instructions. We held in *Ranger v. State,* 249 Ga. 315 (3) (290 SE2d 63) (1982), that reversible error is not shown unless

> " 'the prosecutor's manifest intention was to comment upon the accused's failure to testify' or that the remark was 'of such a character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify.' "

As we cannot say that either prong of this test was met in this case, we do not find that the trial court abused its discretion in denying the defendant's motion for mistrial.

19. Because the jury found the defendant guilty of malice murder, the sequential charge given by the trial court, and disapproved in *Edge v. State,* 261 Ga. 865 (414 SE2d 463) (1992), does not constitute

reversible error. *McGill v. State*, 263 Ga. 81 (428 SE2d 341) (1993).

20. The defendant maintains that the trial court erred in suggesting to the jury during instructions in the sentencing phase that unanimity was required to find mitigating circumstances. We have reviewed the trial court's charge and do not agree that such a suggestion was made. Rather, the court charged the jury that it was not required that they find *any* mitigating fact or circumstance in order to set the penalty at life imprisonment. Contrary to the defendant's assertion, the court adequately defined mitigating circumstances for the jury. The trial court did not err in instructing the jury that its verdict as to the penalty must be unanimous. *Potts v. State*, supra, Division 20.

21. The jury found as aggravating circumstances under OCGA § 17-10-30 (b) that the offense of murder was committed while the defendant was engaged in the commission of armed robbery ((b) (2)); that the offense of murder was committed while the defendant was engaged in the commission of aggravated battery ((b) (2)); that the offense of murder was outrageously or wantonly vile, horrible or inhuman in that it involved torture to the victim prior to his death ((b) (7)); and that the offense of murder was outrageously or wantonly vile, horrible or inhuman in that it involved aggravated battery to the victim prior to his death ((b) (7)). The defendant argues that certain of the trial court's charges on aggravating circumstances were in error.

(a) The defendant was indicted for both felony murder, the underlying felony being the armed robbery of Dr. Johnston, and malice murder. During the guilt/innocence phase of trial the trial court instructed the jury that "the defendant may not be convicted of both malice murder and felony murder." The jury returned a verdict of "guilty" on the charge of malice murder and "not guilty" on the charge of felony murder.

The defendant now argues that because he was acquitted of the charge of felony murder, the trial court erred in charging the jury that it could find, as an aggravating circumstance, that the murder was committed during the commission of another capital felony, to wit: armed robbery.

The jury found the defendant guilty of malice murder and the armed robbery of the murder victim. Because the evidence authorized a finding that the armed robbery and malice murder of the victim was a "continuous course of criminal conduct," the jury was authorized to find the aggravating circumstance in question. See *Romine v. State*, 251 Ga. 208, 214 (8) (305 SE2d 93) (1983). Therefore, the trial court did not err in its charge.

(b) The trial court did not err in charging the jury that it was authorized to find a (b) (2) aggravating circumstance involving aggravated battery as well as a (b) (7) aggravating circumstance involving

aggravated battery. *Parks v. State*, 254 Ga. 403 (16) (330 SE2d 686) (1985).

22. The two separate (b) (7) aggravating circumstances found by the jury were not "duplicitous" and reversible error as the defendant argues. As we have stated before, OCGA § 17-10-30 (b) (7) is in two separate parts. The jury must first find that "the offense of murder . . . was outrageously or wantonly vile, horrible or inhuman . . . ." The jury must then find *one or more* of the three parts of the second component of the statute, i.e., "torture, depravity of mind or an aggravated battery to the victim." *Hance v. State*, 245 Ga. 856 (3) (268 SE2d 339) (1980). See also *Taylor v. State*, 261 Ga. 287 (13) (404 SE2d 255) (1991).

23. We conclude that the evidence supports the jury's findings of statutory aggravating circumstances. OCGA § 17-10-35 (c) (2). We do not find that the death sentence imposed in this case was the result of passion, prejudice or an arbitrary factor. OCGA § 17-10-35 (c) (1). The death sentence against Ledford is neither excessive nor disproportionate to penalties imposed in similar cases, considering both the crime and the defendant. OCGA § 17-10-35 (c) (3). The similar cases listed in the Appendix support the imposition of a death sentence in this case.

*Judgment affirmed. All the Justices concur.*

### APPENDIX.

*Bennett v. State*, 262 Ga. 149 (414 SE2d 218) (1992); *Taylor v. State*, 261 Ga. 287 (404 SE2d 255) (1991); *Gibson v. State*, 261 Ga. 313 (404 SE2d 781) (1991); *Hall v. State*, 259 Ga. 412 (383 SE2d 128) (1989); *Frazier v. State*, 257 Ga. 690 (362 SE2d 351) (1987); *Jefferson v. State*, 256 Ga. 821 (353 SE2d 468) (1987); *Westbrook v. State*, 242 Ga. 151 (249 SE2d 524) (1978); *Finney v. State*, 242 Ga. 582 (250 SE2d 388) (1978); *Bowden v. State*, 239 Ga. 821 (238 SE2d 905) (1977).

DECIDED FEBRUARY 21, 1994 — RECONSIDERATION DENIED MARCH 25, 1994.

*Little & Adams, Sam F. Little, Kinney, Kemp, Pickell, Sponcler & Joiner, Matthew D. Thames,* for appellant.

*Jack O. Partain III, District Attorney, Melvin E. Hyde, Jr., Assistant District Attorney, Michael J. Bowers, Attorney General, Susan V. Boleyn, Senior Assistant Attorney General, Paige M. Reese, Staff Attorney,* for appellee.