# SUPREME COURT OF THE UNITED STATES

## DAYONTA MCCLINTON *v.* UNITED STATES

ON PETITION FOR WRIT OF CERTIORARI TO THE UNITED
STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT

No. 21–1557.   Decided June 30, 2023

The petition for a writ of certiorari is denied.

Statement of JUSTICE SOTOMAYOR respecting the denial of certiorari.

The prosecution in this case argued that Dayonta McClinton, then 17 years old, shot and killed his friend in a dispute over the proceeds of a pharmacy robbery. The jury unanimously acquitted him of killing his friend and convicted him only of robbing the pharmacy.

After that, however, something happened that might strike the average person as quite strange. At McClinton's sentencing for the robbery conviction, the prosecution again argued that McClinton had killed his friend. When the judge agreed, this caused McClinton's Sentencing Guidelines range to skyrocket. While the ultimate sentencing decision is discretionary, "[t]he Guidelines are the framework for sentencing and anchor the district court's discretion." *Molina-Martinez* v. *United States*, 578 U. S. 189, 198–199 (2016) (internal quotation marks and alterations omitted). McClinton's Guidelines range had initially been approximately five to six years. Yet taking into account the killing, the judge sentenced McClinton to 19 years in prison.

As many jurists have noted, the use of acquitted conduct to increase a defendant's Sentencing Guidelines range and sentence[1] raises important questions that go to the fairness and perceived fairness of the criminal justice system. See *Jones* v. *United States*, 574 U. S. 948, 949–950 (2014) (Scalia, J., joined by THOMAS and Ginsburg, JJ., dissenting

_____

[1] For brevity, I will refer to this as "acquitted-conduct sentencing."

from denial of certiorari); see also *United States* v. *Bell*, 808
F. 3d 926, 928 (CADC 2015) (Kavanaugh, J., concurring in
denial of reh'g en banc); *United States* v. *Sabillon-Umana*,
772 F. 3d 1328, 1331 (CA10 2014) (Gorsuch, J.); *United
States* v. *Watts*, 519 U. S. 148, 170 (1997) (Kennedy, J., dis-
senting).[2]

These concerns arise partly from a tension between ac-
quitted-conduct sentencing and the jury's historical role.
Juries are democratic institutions called upon to represent
the community as "a bulwark between the State and the
accused," and their verdicts are the tools by which they do
so. *Southern Union Co.* v. *United States*, 567 U. S. 343, 350
(2012) (internal quotation marks omitted); see also *Blakely*
v. *Washington*, 542 U. S. 296, 305–306 (2004) ("Just as suf-
frage ensures the people's ultimate control in the legislative
and executive branches, jury trial is meant to ensure their
control in the judiciary"). Consistent with this, juries were
historically able to use acquittals in various ways to limit
the State's authority to punish, an ability that the Founders
prized. See *Jones* v. *United States*, 526 U. S. 227, 245–246
(1999). With an acquittal, the jury as representative of the
community has been asked by the State to authorize pun-
ishment for an alleged crime and has refused to do so.

---

[2] Many other state and federal judges have questioned the practice.
See also, *e.g.*, *State* v. *Melvin*, 248 N. J. 321, 349–352, 258 A. 3d 1075,
1092–1094 (2021); *People* v. *Beck*, 504 Mich. 605, 625–629, 939 N. W. 2d
213, 224–227 (2019); *State* v. *Marley*, 321 N. C. 415, 424–425, 364 S. E.
2d 133, 138–139 (1988); *State* v. *Cote*, 129 N. H. 358, 375–376, 530 A. 2d
775, 785 (1987); *Jefferson* v. *State*, 256 Ga. 821, 827, 353 S. E. 2d 468,
474 (1987); *United States* v. *Tapia*, 2023 WL 2942922, *2, n. 2 (CA2, Apr.
14, 2023); *United States* v. *Brown*, 892 F. 3d 385, 408–409 (CADC 2018)
(Millett, J., concurring); *United States* v. *White*, 551 F. 3d 381, 391–397
(CA6 2008) (Merritt, J., dissenting); *United States* v. *Canania*, 532 F. 3d
764, 776–778 (CA8 2008) (Bright, J., concurring); *United States* v. *Mer-
cado*, 474 F. 3d 654, 658, 662–665 (CA9 2007) (Fletcher, J., dissenting);
*United States* v. *Baylor*, 97 F. 3d 542, 550–553 (CADC 1996) (Wald, J.,
concurring); *United States* v. *Concepcion*, 983 F. 2d 369, 395–396 (CA2
1992) (Newman, J., dissenting).

This helps explain why acquittals have long been "accorded special weight," *United States* v. *DiFrancesco*, 449 U. S. 117, 129 (1980), distinguishing them from conduct that was never charged and passed upon by a jury.[3] This special weight includes traditionally treating acquittals as inviolate, even if a judge is convinced that the jury was "mistaken." *Id.*, at 130. In contrast, there appears to be little record of acquitted-conduct sentencing before the 1970s. See C. Murray, Hard Cases Make Good Law: The Intellectual History of Prior Acquittal Sentencing, 84 St. John's L. Rev. 1415, 1444, 1427–1437, 1450–1455 (2010) (describing the role of federal statutes and especially the Guidelines in the rise of acquitted-conduct sentencing).[4]

The argument for acquitted-conduct sentencing is generally based on standards of proof. A sentencing judge makes findings by a preponderance of the evidence, whereas a jury applies the higher beyond-a-reasonable-doubt standard. Because an acquittal could reflect a jury's conclusion that the evidence of guilt fell just short of the beyond-a-reasonable-doubt standard, the argument goes, there is no conflict with a judge making a contrary finding of guilt under a lower evidentiary standard.

Yet there is a tension between this narrower conception of an acquittal and the manner in which juries historically used acquittals. See *Jones*, 526 U. S., at 245–246; see also *Blakely*, 542 U. S., at 305–306 (jury trial "is no mere procedural formality, but a fundamental reservation of power in

_____

[3] The history and nature of acquittals distinguishes the narrow question of acquitted-conduct sentencing from broader questions posed by JUSTICE ALITO about the other kinds of facts judges may consider at sentencing.

[4] Many sentencing courts throughout history have thus gone without acquitted conduct and various States have expressly limited such consideration for decades. See *Cote*, 129 N. H., at 375–376, 530 A. 2d, at 785; *Jefferson*, 256 Ga., at 827, 353 S. E. 2d, at 474; *Marley*, 321 N. C., at 424–425, 364 S. E. 2d, at 138–139. This suggests that JUSTICE ALITO's workability concerns may not be as dire as he fears.

our constitutional structure"). Further, an acquittal could also reflect a jury's conclusion that the State's witnesses were lying and that the defendant is innocent of the alleged crime. In that case, it is questionable that a jury's refusal to authorize punishment is consistent with the judge giving the defendant additional years in prison for the same alleged crime. The fact is that even though a jury's specific reasons for an acquittal will typically be unknown, the jury has formally and finally determined that the defendant will not be held criminally culpable for the conduct at issue. So far as the criminal justice system is concerned, the defendant "has been set free or judicially discharged from an accusation; released from a charge or *suspicion* of guilt." *State* v. *Marley*, 321 N. C. 415, 424, 364 S. E. 2d 133, 138 (1988) (internal quotation marks and alterations omitted).

There are also concerns about procedural fairness and accuracy when the State gets a second bite at the apple with evidence that did not convince the jury coupled with a *lower* standard of proof. Even defendants with strong cases may understandably choose not to exercise their right to a jury trial when they learn that even if they are acquitted, the State can get another shot at sentencing.

Finally, acquitted-conduct sentencing also raises questions about the public's perception that justice is being done, a concern that is vital to the legitimacy of the criminal justice system. Various jurists have observed that the woman on the street would be quite taken aback to learn about this practice. See, *e.g.*, *United States* v. *Canania*, 532 F. 3d 764, 778 (CA8 2008) (Bright, J., concurring).

This is also true for jurors themselves. One juror, after learning about acquitted-conduct sentencing, put it this way: "'We, the jury, all took our charge seriously. We virtually gave up our private lives to devote our time to the cause of justice . . . . What does it say to our contribution as jurors when we see our verdicts, in my personal view, not

given their proper weight. It appears to me that these defendants are being sentenced not on the charges for which they have been found guilty but on the charges for which the District Attorney's office would have liked them to have been found guilty.'" *Id.*, at 778, n. 4. In this Nation, juries have historically been venerated as "a free school . . . to which each juror comes to learn about his rights." 1 A. de Tocqueville, Democracy in America 316 (A. Goldhammer transl. 2004). One worries about the lesson jurors learn from acquitted-conduct sentencing.

The Court's denial of certiorari today should not be misinterpreted.[5] The Sentencing Commission, which is responsible for the Sentencing Guidelines, has announced that it will resolve questions around acquitted-conduct sentencing in the coming year. If the Commission does not act expeditiously or chooses not to act, however, this Court may need to take up the constitutional issues presented.

_____

[5] The Court today will deny certiorari in a series of similar cases involving acquitted-conduct sentencing, and the issues discussed here apply to those cases as well.

# SUPREME COURT OF THE UNITED STATES

### DAYONTA McCLINTON *v.* UNITED STATES

#### ON PETITION FOR WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT

No. 21–1557.   Decided June 30, 2023

Statement of JUSTICE KAVANAUGH, with whom JUSTICE GORSUCH and JUSTICE BARRETT join, respecting the denial of certiorari.

As JUSTICE SOTOMAYOR explains, the Court's denial of certiorari today should not be misinterpreted. The use of acquitted conduct to alter a defendant's Sentencing Guidelines range raises important questions. But the Sentencing Commission is currently considering the issue. It is appropriate for this Court to wait for the Sentencing Commission's determination before the Court decides whether to grant certiorari in a case involving the use of acquitted conduct.

# SUPREME COURT OF THE UNITED STATES

## DAYONTA McCLINTON *v.* UNITED STATES

ON PETITION FOR WRIT OF CERTIORARI TO THE UNITED
STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT

No. 21–1557.   Decided June 30, 2023

JUSTICE ALITO, concurring in the denial of certiorari.

This Court does not lobby government entities to make preferred policy decisions, and no one should misinterpret my colleagues' statements as an effort to persuade the Sentencing Commission to alter its longstanding decision that acquitted conduct may be taken into account at sentencing. Even if the Commission eventually decides on policy grounds that such conduct should not be considered in federal sentencing proceedings, that decision will not affect state courts, and therefore the constitutional issue will remain.

The fundamental argument advanced in support of the proposition that consideration of such conduct at sentencing violates the Sixth Amendment right to a jury trial relies on what, I submit, is a flawed understanding of the meaning of that right when the Amendment was adopted, namely, that a defendant's sentence may be based only on facts that a jury has found beyond a reasonable doubt. As scholars have noted, there is strong evidence that this was not the understanding of the jury-trial right in 1791. See, *e.g.*, S. Bibas, Judicial Fact-Finding and Sentence Enhancements in a World of Guilty Pleas, 110 Yale L. J. 1097, 1123–1132 (2001); R. Little & T. Chen, The Lost History of *Apprendi* and the *Blakely* Petition for Rehearing, 17 Fed. Sentencing Rep. 69 (2004). In that era, federal criminal statutes often gave sentencing judges the authority to impose any sentence that fell within a prescribed range, and in exercising that authority, judges necessarily took into account facts that the jury had not found at trial. See K. Stith &

J. Cabranes, Fear of Judging: Sentencing Guidelines in the
Federal Courts 9–10 (1998). It is particularly significant
that several federal criminal statutes enacted by the First
Congress followed this approach. See Act of Apr. 30, 1790,
1 Stat. 112–118. That same Congress framed and proposed
the Sixth Amendment and sent it to the States for ratifica-
tion, and we have often reasoned that statutes enacted by
that Congress are "persuasive evidence of what the Consti-
tution means." *Harmelin* v. *Michigan*, 501 U. S. 957, 980
(1991) (opinion of Scalia, J.); see also, *e.g.*, *Bowsher* v.
*Synar*, 478 U. S. 714, 723–724 (1986); *Marsh* v. *Chambers*,
463 U. S. 783, 790 (1983).

If, as the First Congress apparently believed, a sentenc-
ing judge may consider facts not proved at trial, that prin-
ciple undermines the fundamental argument advanced to
show that so-called acquitted conduct may not be consid-
ered.* Facts that simply affect a sentence "can be proved
. . . by a preponderance of the evidence," *United States* v.
*O'Brien*, 560 U. S. 218, 224 (2010), but facts needed to es-

———————

*Without the benefit of full briefing and argument, I am reluctant to
opine on the history of the consideration of acquitted conduct at sentenc-
ing. See *ante*, at 2–3 (SOTOMAYOR, J., statement respecting denial of cer-
tiorari). But because, as I explain, there is no relevant difference for
these purposes between acquitted conduct and uncharged conduct, the
historical evidence supporting consideration of uncharged conduct is
highly relevant to the consideration of acquitted conduct. Indeed, the
sources JUSTICE SOTOMAYOR cites in her historical discussion support my
arguments regarding the propriety of considering conduct not implicated
by the jury's verdict and the logical connection between that and consid-
ering acquitted conduct. See *Jones* v. *United States*, 526 U. S. 227, 248
(1999) ("It is not, of course, that anyone today would claim that every fact
with a bearing on sentencing must be found by a jury; we have resolved
that general issue and have no intention of questioning its resolution");
C. Murray, Hard Cases Make Good Law: The Intellectual History of
Prior Acquittal Sentencing, 84 St. John's L. Rev. 1415, 1423–1425 (2010)
(explaining that the reasons that justify considering uncharged conduct
apply as a matter of logic to considering acquitted conduct).

tablish an element of a criminal offense must be proved beyond a reasonable doubt, *In re Winship*, 397 U. S. 358, 364 (1970). Therefore, the most that can be inferred from a not-guilty verdict is that this high standard was not met. *United States* v. *Watts*, 519 U. S. 148, 155 (1997) (*per curiam*). It cannot be inferred that the facts needed to convict were not shown by even a preponderance of the evidence, and that is why, it has been thought, acquitted conduct may be considered at sentencing. *Ibid.*

JUSTICE SOTOMAYOR mentions three other arguments in favor of a rule barring consideration of acquitted conduct, *ante*, at 4–5 (statement respecting denial of certiorari), but all of these arguments have weaknesses. The first argument is that a jury that returns a not-guilty verdict may have thought that even the preponderance-of-the-evidence standard was not met, but it would be odd indeed to base a constitutional rule on such speculation. Second, JUSTICE SOTOMAYOR claims that jurors who vote for acquittal may be surprised and even offended when they learn that the judge took acquitted conduct into account at sentencing, but jurors are not typically given the authority to choose the sentence that is imposed on a defendant they convict. That is usually the prerogative of the judge, and therefore any jurors who feel that the judge has infringed on their authority do not understand the scope of their role. In addition, juror surprise about either the severity or leniency of the sentence that a judge selects is almost certainly not confined to situations in which the sentence was affected by acquitted conduct. Third, JUSTICE SOTOMAYOR asserts that "the woman on the street" would be surprised to learn that a sentence was based on acquitted conduct. *Ante*, at 4 (statement respecting denial of certiorari). If that is true, it shows only that many people do not understand that "an acquittal on criminal charges does not prove that the defendant is innocent; it merely proves the existence of a rea-

sonable doubt as to his guilt." *United States* v. *One Assortment of 89 Firearms*, 465 U. S. 354, 361 (1984).

If we eventually take up the acquitted-conduct issue, we will have to consider whether *stare decisis* stands in the way. In *United States* v. *Watts*, we said that there is no "prohibition against considering certain types of evidence at sentencing," including "uncharged or acquitted conduct." 519 U. S., at 152–155. Although the only specific constitutional challenge to consideration of acquitted conduct in *Watts* was based on the Double Jeopardy Clause, rather than due process or the jury-trial right, we framed our holding in broad terms, stating that "a jury's verdict of acquittal does not prevent the sentencing court from considering conduct underlying the acquitted charge, so long as that conduct has been proved by a preponderance of the evidence." *Id.*, at 157. Justice Stevens's dissent evinces the same broad understanding of the Court's decision. *Id.*, at 165 ("The precise question here" is "the burden of proof applicable to sentencing facts"). And subsequent decisions reflect this same understanding. *United States* v. *Booker*, 543 U. S. 220, 251 (2005) (characterizing *Watts* as holding "that a sentencing judge [can] rely for sentencing purposes upon a fact that a jury had found unproved" (emphasis deleted)); *Alabama* v. *Shelton*, 535 U. S. 654, 665 (2002) (Defendant was sentenced "in accord with *due process* . . . even if he [was] acquitted of the" conduct the sentence was in part based on (citing *Watts*; emphasis added)).

If holding that the Constitution prohibits the consideration of acquitted conduct at sentencing would require us to overrule *Watts*, we would also have to assess whether the resulting rule would be workable. See, *e.g.*, *Kimble* v. *Marvel Entertainment, LLC*, 576 U. S. 446, 459–460 (2015) (analyzing the workability not only of the precedent, but of the proposed new rule as well). And while the *Watts* regime has been shown to be eminently workable, significant practical concerns pervade the alternatives.

First, it will frequently be "impossible to know exactly why a jury found a defendant not guilty on a certain charge." *Watts*, 519 U. S., at 155. Take the example of an acquittal in a felony-murder case. How could a court tell whether the failure of proof concerned the killing or the underlying felony? If a defendant was acquitted for murder in aid of racketeering activity, see 18 U. S. C. §1959(a)(1), how could a court know whether the verdict was because the murder was unproved or because racketeering was not established? In the case of an acquittal for traveling in interstate commerce with the intent to commit a crime of violence from which death in fact results, see §1952(a)(2)(B), how could it be determined whether the prosecution failed to prove the requisite intent or failed to show that the defendant traveled in interstate commerce? No doubt, special-verdict forms would proliferate in such a system, despite the fact that they are generally disfavored in criminal cases and thought to disadvantage defendants.

Second, barring consideration of acquitted conduct would raise the issue of considering the conduct needed to convict on a count on which the jury was unable to reach a verdict. Suppose that a jury convicts on one count of an indictment but deadlocks on the other, and suppose that the prosecution is content to proceed to sentencing. Can the sentencing court consider conduct underlying the deadlocked count?

Finally, consider the following hypothetical. Suppose a crime has three elements, A, B, and C. Suppose that the jury acquits a defendant of the charge, and suppose that a special-verdict form reveals that every juror found that the prosecution had not proved A. If the facts needed to prove B or C have a bearing on the appropriate sentence for a separate offense for which the defendant was found guilty, what is the trial judge to do? Must the jury keep deliberating on B and C? Perhaps the jury, having decided that the showing on A was obviously deficient, gave little thought to

either of those elements. But sending the jury back to continue deliberating on B or C after it has already reached a verdict of acquittal would be odd and unprecedented.

If the Court in some future case takes up the question of the constitutionality of considering acquitted conduct at sentencing, better arguments on both sides of the issue may be presented to us, and nothing that I have written here should be understood as the expression of a firm position on that question. But because my colleagues have laid out some of the arguments in favor of one side, I thought it appropriate to outline some of the countervailing arguments.