CARNES, Chief Judge:
Juan Carlos Chavez kidnapped a nine-year-old boy at gunpoint, anally raped him, verbally taunted and terrorized him, shot him to death, dismembered his body, discarded his body parts in three planters, and then filled those planters with concrete. See Chavez v. State, 832 So.2d 730, 738-41 (Fla.2002). Facing imminent execution, Chavez has filed a lawsuit claiming that he may experience unnecessary pain when the State of Florida executes him by lethal injection. After conducting an evi-dentiary hearing, the district court denied Chavez’s request for a temporary restraining order, preliminary injunction, or stay of execution. This is his appeal.[1]
*1269 I. BACKGROUND
On January 2, 2013, Florida Governor Rick Scott signed Chavez’s death warrant and his execution was set for 6:00 p.m. on February 12, 2014. After the death warrant was signed, Chavez filed a 42 U.S.C. § 1983 lawsuit in district court challenging the constitutionality of Florida’s recently revised lethal injection protocol, which substituted midazolam hydrochloride, a sedative in the benzodiazepine family of drugs, for pentobarbital, a barbiturate, as the first drug in the three-drug protocol.
Florida’s revised lethal injection protocol, adopted on September 9, 2013 (2013 Protocol), calls for the sequential intravenous administration of three drugs: (1) 500 milligrams of midazolam hydrochloride, which is meant to serve as an anesthetic; (2) 100 milligrams of vecuronium bromide, a neuromuscular blocking agent that paralyzes voluntary muscles, including the diaphragm, and stops respiration; and (3) 240 milliequivalents of potassium chloride, a naturally occurring salt that induces cardiac arrest by interfering with the heart’s electrical activity. Chavez also filed a motion for a temporary restraining order, preliminary injunction, or stay of execution (omnibus motion).
Although Chavez’s amended § 1983 complaint raised a number of claims for relief from his impending execution, only one of those claims merits extended discussion.[2] Chavez’s principal claim is that the use of midazolam hydrochloride in the 2013 Protocol violates the Eighth Amendment’s ban on cruel and unusual punishment because it creates a substantial risk of serious harm. In both his amended complaint and omnibus motion, Chavez alleged that when used by itself midazolam is not effective in inducing “a surgical plane of anesthesia,” which is a state of complete unconsciousness and insensitivity to pain or other “noxious stimuli” that would prevent a condemned inmate from experiencing the asphyxiation and searing pain caused by the remaining two drugs in the lethal injection protocol.
Relying on the declaration of his retained expert, anesthesiologist Dr. David Lubarsky, Chavez asserted that midazo-lam is not typically used in clinical settings, nor FDA-approved for use, as a standalone anesthetic in major surgical procedures because it has no analgesic (pain-relieving) properties; that it can trigger “paradoxical reactions” which would prevent its sedative properties from taking effect, particularly in those, like himself, who suffer from extreme anxiety or certain other mental disorders; that there is no scientific evidence that 500 milligrams of midazolam would produce a *1270 state of complete unconsciousness; and that the 2013 Protocol is not properly suited to addressing these concerns because it does not require the assistance of trained medical personnel and its mandated consciousness check does not adequately ensure that an inmate is unconscious before the final two drugs in the protocol are administered.
Chavez also pointed to published news reports of three recent executions — the Florida executions of William Happ and Askari Abdullah Muhammad, and the Ohio execution of Dennis McGuire — each of which is said to have involved varying degrees of movement after the administration of midazolam. Chavez took these reported movements — a momentary head movement in case of Happ, the opening of an eye in the case of Muhammad, and McGuire appearing to gasp for air — as indicating that midazolam is not effective in rendering an inmate unconscious and insensate to pain. As a proffered alternative to the use of midazolam, Chavez advocated the use of a barbiturate, either in combination with other drugs or in a single fatal dose, as a more humane method of execution that “would significantly reduce the substantial risk of excruciating pain” allegedly created by the 2013 Protocol. But the only specific barbiturates named anywhere in his amended complaint or omnibus motion were pentobarbital and sodium thiopental, both of which Florida had previously used as the first drug in its lethal injection protocol. Florida initially used sodium thiopental, but as Chavez explained in an appendix to his amended complaint, “international pressure against the death penalty [ ] resulted in a shortage of sodium thiopental” that forced states with capital punishment “to scramble for an alternative drug.” Florida then selected pentobarbi-tal, but as Chavez conceded in his amended complaint, pentobarbital is no longer available and the “2013 Protocol was created in response to [its] unavailability.”
After an evidentiary hearing marked by sharply conflicting testimony from Chavez’s expert, Dr. Lubarsky, and the State’s expert, Dr. Roswell Lee Evans, the district court denied Chavez’s omnibus motion for a temporary restraining order, preliminary injunction, or stay of execution because he had not shown a substantial likelihood of success on the merits of his claims, both on the merits themselves and as to the statute of limitations defense the State had asserted. The court rejected Dr. Lubarsky’s testimony as “essentially speculative and insufficient to meet [Chavez’s] burden,” and instead credited Dr. Evans’ testimony that 500 milligrams of midazolam — forty times the dosage typically used in clinical settings — would not only induce a deep anesthetic state in which an inmate would be rendered insensate, unconscious, and incapable of feeling pain, but would ultimately result in respiratory arrest, cardiac arrest, and death. Doc. 50 at 22-25, 33, 35. Based on Dr. Evans’ testimony, the court concluded that the “massive dose [of midazolam] required by the Florida protocol ... will render the individual insensate to noxious stimuli by placing the individual in an anesthetic state, unable to discern pain,” that its effects would be “quite similar to that of sodium thiopental or pento-barbital on consciousness,” and that it “would result in a cascade effect with the whole body rapidly starting to shut down” until an inmate’s “ultimate[] death.” Id. at 25, 35.
The court, again crediting Dr. Evans’ testimony, also rejected Chavez’s contention that midazolam, in the massive dose stipulated in the 2013 Protocol, carries a substantial risk of paradoxical reactions, and his contention that the bodily movements reported in the executions of Happ, Muhammad, and McGuire demonstrated a *1271 significant likelihood of consciousness when midazolam is used in an execution protocol. Dr. Evans testified during the evidentiary hearing that the incidence of paradoxical reactions in normal therapeutic settings was “less than 1 percent,” and that a massive dose of midazolam would avoid any potential paradoxical reactions and directly render a person unconscious. The district court credited all of that testimony and discredited Dr. Lubarsky’s contrary testimony. Dr. Evans also testified that body movement does not necessarily indicate consciousness. Crediting that testimony, the' court found that “Happ’s movement (and Muhammad’s, if his eye opened) does not necessarily equate to pain or with consciousness,” that the two-drug protocol used in Ohio to execute McGuire was not “sufficiently similar to Florida’s execution protocol” to call Florida’s protocol into question, and that Chavez “may have only a 1 percent risk of a paradoxical reaction.” Doc. 50 at 25 n. 24, 26-27, 30. Because Chavez had failed to show that Florida’s current lethal injection protocol creates a substantial risk of severe pain, the district court found that he could not successfully challenge the protocol “by contending that the one-drug protocol may be a better execution protocol for Florida to adopt.” Id at 37.
Chavez timely appealed to us the district court’s denial of his omnibus motion.[3] We have jurisdiction under 28 U.S.C. § 1292(a)(1). He has also filed in this Court an application for a stay of execution.
II. DISCUSSION
A preliminary injunction is appropriate if the movant demonstrates all of these elements: (1) a substantial likelihood of success on the merits; (2) that the preliminary injunction is necessary to prevent irreparable injury; (3) that the threatened injury outweighs the harm the preliminary injunction would cause the other litigant; and (4) that the preliminary injunction would not be averse to the public interest. Parker v. State Bd of Pardons & Paroles, 275 F.3d 1032, 1034-35 (11th Cir.2001). We review a district court’s denial of a motion for a preliminary injunction only for an abuse of discretion. See Valle v. Singer, 655 F.3d 1223, 1225 (11th Cir.2011).
Capital punishment, including capital punishment by lethal injection, generally is constitutional. See Baze v. Rees, 553 U.S. 35, 47, 128 S.Ct. 1520, 1529, 170 L.Ed.2d 420 (2008) (plurality opinion).[4] *1272 Because “[s]ome risk of pain is inherent in any method of execution,” the Eighth Amendment “does not demand the avoidance of all risk of pain in carrying out executions,” particularly where the pain results “by accident or as an inescapable consequence of death.” Id. at 47, 50, 128 S.Ct. at 1529, 1531. Nor does the Eighth Amendment prohibit procedures that create an “unnecessary risk” of pain without more. Id. at 47, 51, 128 S.Ct. at 1529, 1532 (rejecting the petitioners’ contention that the “the Eighth Amendment prohibits procedures that create an ‘unnecessary risk’ of pain”). Instead, to prevail on an Eighth Amendment challenge to a lethal injection protocol, a condemned inmate must establish “an objectively intolerable risk of harm that prevents prison officials from pleading that they were subjectively blameless for purposes of the Eighth Amendment.” Id. at 50, 128 S.Ct. at 1531 (quotation marks omitted). To demonstrate that, an inmate must show two things: (1) the lethal injection protocol in question creates “a substantial risk of serious harm,” and (2) there are “known and available alternatives” that are “feasible, readily implemented,” and that will “in fact significantly reduce [the] substantial risk of severe pain.” Id. at 50, 52, 61, 128 S.Ct. at 1531-32, 1537; see also id. at 52 n. 3, 128 S.Ct. at 1532 n. 3 (noting that a showing of a “substantial risk of serious harm” is a “threshold requirement” for asserting a viable Eighth Amendment challenge).
Chavez has not established a substantial likelihood of success on the merits of his Eighth Amendment claim that the use of midazolam hydrochloride in Florida’s current lethal injection protocol amounts to cruel and unusual punishment. In light of the district court’s thorough and detailed credibility determinations and the extensive factual findings that flowed from them, including the court’s finding that the “massive dose [of midazolam] required by the Florida protocol ... will render the individual insensate to noxious stimuli by placing the individual in an anesthetic state, unable to discern pain,” Chavez has not demonstrated that the use of midazo-lam in the 2013 Protocol creates a substantial risk of serious harm. The district court’s findings, none of which are clearly erroneous, negate any contention that Chavez’s evidence shows that midazolam is not effective as an anesthetic. See Anderson v. City of Bessemer City, N.C., 470 U.S. 564, 574-575, 105 S.Ct. 1504, 1511-12, 84 L.Ed.2d 518 (1985) (explaining that factual findings may not be set aside on appeal unless clearly erroneous, and that “when a trial judge’s finding is based on his decision to credit the testimony of one of two or more witnesses, each of whom has told a coherent and facially plausible story that is not contradicted by extrinsic evidence, that finding, if not internally inconsistent, can virtually never be clear error”); United States v. Lebow-itz, 676 F.3d 1000, 1009 (11th Cir.2012) (“Appellate courts reviewing a cold record give particular deference to credibility determinations of a fact-finder who had the opportunity to see live testimony.”) (quotation marks omitted). As a result, Chavez *1273 cannot show that the use of midazolam would allow him to feel sensations of suffocation and searing pain caused by the other two drugs in the 2013 Protocol, vecuro-nium bromide and potassium chloride. This ground is a sufficient basis to find that the district court did not abuse its discretion in finding that Chavez failed to demonstrate a substantial likelihood of success on the merits.[5]
III. THE MOTION FOR A STAY OF EXECUTION
The standard for granting a motion for a stay of execution mirrors that for granting a preliminary injunction which, in this specific context, is a stay of execution. A stay should not be granted unless the inmate establishes a substantial likelihood of success on the merits. Valle, 655 F.3d at 1225. For the reasons we have already discussed, Chavez has failed to show a substantial likelihood of success on the merits of his claims. For that reason, his motion for a stay of execution is due to be denied without regard to the other three requirements for issuance of one. Id.
IV. CONCLUSION
The district court’s order denying a preliminary injunction is AFFIRMED. The motion for a stay of execution is DENIED.

. Chavez's unsuccessful attempts to have his conviction and death sentence set aside are *1269 reflected in Chavez v. Secretary, Florida Department of Corrections, No. 14-10486, 742 F.3d 940, 2014 WL 504720 (11th Cir. Feb. 10, 2014); Chavez v. State, No. SC14-35, - So.3d -, 2014 WL 346026 (Fla. Jan. 31, 2014); Chavez v. State, No. SC 12-1470, 129 So.3d 1067, 2013 WL 5629607 (Fla. Oct. 11, 2013); Chavez v. Secretary Florida Department of Corrections, 647 F.3d 1057 (11th Cir.2011); Chavez v. State, 12 So.3d 199 (Fla.2009); and Chavez v. State, 832 So.2d 730 (Fla.2002).

. We do, however, pause to note our agreement with the district court's reasoning concerning Chavez’s claim that the forcible administration of vecuronium bromide would violate his due process rights under Sell v. United States, 539 U.S. 166, 123 S.Ct. 2174, 156 L.Ed.2d 197 (2003), because it serves no medical purpose in the execution process. As the district court explained, the liberty interest in avoiding involuntary medical treatment that Sell identified does not apply in the context of capital punishment because "by its nature, the execution process is not a medical procedure, and by design, it is not medically appropriate for the condemned.” Doc. 50 at 39. And "[u]sing drugs for the purpose of carrying out the death penalty does not constitute medical treatment.” Id. at 42.

. Chavez's notice of appeal states that he appeals from “the decision" of the district court on February 10, 2014. The decision of the court on that date was to deny his omnibus motion seeking a preliminary injunction, a temporary restraining order, and a stay of execution. Because notice was given to the party opposing the motion for a restraining order and an evidentiary hearing has been held, the motion for a restraining order is moot or, if one prefers, the issues involving it are merged into the motion for a preliminary injunction. Likewise, any attempted appeal of the district court’s denial of a stay of execution is subsumed in Chavez's motion for a stay of execution in this Court. We would not hold that the district court abused its discretion in deciding not to stay the execution unless, at a minimum, we ourselves were going to stay the execution, which would in turn moot an appeal of the district court's denial of a stay. For those reasons, and for the sake of brevity and clarity, we will treat Chavez's appeal as challenging the denial of his request for a preliminary injunction.

. The plurality opinion in Baze was joined by only three Justices, but it contains the holdings of the Court in that case. See Marks v. United States, 430 U.S. 188, 193, 97 S.Ct. 990, 993, 51 L.Ed.2d 260 (1977) (explaining that with a fractured decision the holding of the Court is the “position taken by those Members who concurred in the judgments on the narrowest grounds”) (internal marks and quotation marks omitted). Chief Justice Rob *1272 erts’ plurality opinion denied relief on a narrower ground than the concurring opinion of Justice Thomas, which was joined by Justice Scalia. See Baze, 553 U.S. at 39, 47-52, 128 S.Ct. at 1525, 1529-32 (plurality opinion); id. at 94-107, 128 S.Ct. at 1556-63 (Thomas, J., concurring in the judgment, joined by Scalia, J.). Two circuits have explicitly recognized that Chief Justice Roberts' plurality opinion contains the holdings in Baze. See Dickens v. Brewer, 631 F.3d 1139, 1145-46 (9th Cir.2011); Jackson v. Danberg, 594 F.3d 210, 222-23 (3d Cir.2010). We have implicitly done so. See Valle, 655 F.3d at 1231-32; DeYoung v. Owens, 646 F.3d 1319, 1325 (11th Cir.2011); Powell v. Thomas, 641 F.3d 1255, 1257 (11th Cir.2011).

. In light of our conclusion that Chavez has not established a substantial likelihood of success on the merits of any of his claims, we do not address and imply no view about the State's asserted defenses based on the statute of limitations, exhaustion of administrative remedies, and res judicata.