[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No.  17-12167-P

_____

J. W. LEDFORD, JR.,

Plaintiff-Appellant,

versus

COMMISSIONER, GEORGIA DEPARTMENT OF CORRECTIONS,
WARDEN,
OTHER UNKNOWN EMPLOYEES AND AGENTS,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

Before ED CARNES, Chief Judge, TJOFLAT, HULL, MARCUS, WILSON,
WILLIAM PRYOR, MARTIN, JORDAN, ROSENBAUM, and JILL PRYOR,
Circuit Judges.[*]

BY THE COURT:

A petition for initial hearing en banc having been filed, a judge in active

service having requested a poll on the petition, and a majority of the judges in

_____

[*] Judge Julie Carnes, having recused herself, did not participate.

active service having voted against it, the petition is DENIED.  The motion for a stay of execution is DENIED and the State's motion to file a response to the plaintiff-appellant's sur-reply is DENIED AS MOOT.

ED CARNES, Chief Judge, concurring in the denial of the petition for initial hearing en banc:

Concurring in the denial of the motion for hearing en banc, I write separately to point out a different interpretation of the record than that of two of my colleagues, which bears on the timeliness issue.

Judge Wilson's dissenting opinion states that what Ledford alleges is that "he has a 'unique medical condition,' and he alleges that the condition arose within the past two years." Wilson Dissent at 25 n.3. This, he adds, is not like the claim in Gissendaner that relied on conditions that had not changed in the past two years. Id. But in the complaint he filed in the district court, Ledford alleged that he has been taking gabapentin for over a decade and that the problem is the brain becomes less responsive to other drugs over a prolonged period of time. See Complaint at 2 ("His long-term exposure to this medication has changed the chemistry of his brain . . . ."); id. at 9 ("When taken for an extended period of time, gabapentin will alter a person's brain chemistry . . . ."); id. at 10 ("Those receptors shaped by long-term administration of gabapentin become less responsive to pentobarbital."); id. at 12 (Dr. Bergese's opinion based on gabapentin having been "administered to a person . . . for a considerable period of time"); id. at 15 (Dr. Zivot's opinion based on Ledford's "prolonged exposure to gabapentin"); id. at 16 ("Accordingly, because of his decade of gabapentin treatments . . ."); id. (alleging that the objectively intolerable risk arises from "his decade-long use of gabapentin"). The complaint

3

could not, and does not, allege that the decade-long use of gabapentin arose within the last two years.  It arose over more than a decade, far outside the two year statute of limitations.

Judge Jill Pryor's dissenting opinion states that Ledford's dosage of gabapentin has been increasing for a number of years, and his long term exposure to it has altered his brain chemistry so that using pentobarbital is very likely to cause him to experience unbearable pain and suffering.  But Ledford never alleged that the risk of gabapentin diminishing the effect of pentobarbital arose only in the last two years before he filed the complaint.  We cannot fault district courts for failing to foresee theories not alleged before them.

HULL, Circuit Judge, specially concurring in the denial of the petition for initial hearing en banc:

I concur for the reasons set forth in the assigned panel's published order, dated May 15, 2017, attached hereto as Exhibit A, which denies Mr. Ledford's belated motion for a stay of execution. Among other reasons, Mr. Ledford's 42 U.S.C. § 1983 claims are barred by the statute of limitations and, in any event, as a matter of equitable considerations, are untimely filed five days before his execution.

For example, Mr. Ledford's own complaint alleges he has been taking escalating doses of gabapentin for approximately a decade, and in March 2013 Georgia began using a single dose of five grams of pentobarbital in its lethal injection protocol. Thus, Mr. Ledford's § 1983 claims, which are largely about his prolonged use of gabapentin for ten years and the interaction of gabapentin and pentobarbital, accrued at least by 2013 and his § 1983 claims were not filed until May 11, 2017, which is two years too late.

In any event, as discussed in the panel opinion, Mr. Ledford has not shown a substantial risk of severe pain as required by Glossip v. Gross, 576 U.S. __, 135 S. Ct. 2726 (2015), or a substantial likelihood of success on the merits of his claims to warrant a stay of execution. I also concur in the denial of Mr. Ledford's petition for the reasons laid out in the majority opinions in Boyd v. Warden, Holman Correctional Facility, ___ F.3d ___, No. 15-14971, 2017 WL 1856071 (May 9,

5

2017), and <u>Arthur v. Comm'r, Ala. Dep't of Corr.</u>, 840 F.3d 1268 (11th Cir. 2016),

<u>cert. denied sub. nom. Arthur v. Dunn</u>, ___ U.S. ___, 137 S. Ct. 725 (2017).

# EXHIBIT A

[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 17-12167
Non-Argument Calendar

_____

D.C. Docket No. 1:17-cv-01705-SCJ


J. W. LEDFORD, JR.,

Plaintiff - Appellant,

versus

COMMISSIONER, GEORGIA DEPARTMENT OF CORRECTIONS,
WARDEN,
OTHER UNKNOWN EMPLOYEES AND AGENTS,

Defendants - Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____


Before ED CARNES, Chief Judge, HULL and JORDAN, Circuit Judges.

HULL, Circuit Judge:

7

Under a sentence of death, J.W. Ledford, Jr. has his execution scheduled for Tuesday, May 16, 2017, at 7:00 p.m.  On Thursday, May 11, 2017, a mere five days before his execution, Ledford challenged Georgia's method of his execution by filing a civil complaint under 42 U.S.C. § 1983.  Since 2013, Georgia's execution protocol has provided for lethal injection by the administration of a single drug:  five grams (5,000 milligrams) of compounded pentobarbital.

After briefing, the district court denied Ledford's motion for a temporary restraining order and dismissed Ledford's § 1983 complaint.  The district court determined, inter alia, (1) that Ledford's § 1983 claims are time barred; (2) that, in any event, Ledford had not shown a substantial likelihood of success on the merits of his § 1983 claims; and (3) that, alternatively, Ledford had not carried his burden to demonstrate that equitable relief, such as a stay, should be granted at this late hour.

On May 12, 2017, Ledford filed a Notice of Appeal.  On May 15, 2017, at 11:00 a.m., Ledford filed an "Emergency Motion for an Order Staying the Execution."  After careful review, we deny Ledford's motion.

## I.  BACKGROUND

In 1992, Ledford murdered his 73-year-old neighbor, Dr. Harry Johnston, Jr., robbed Dr. Johnston's wife, and burglarized the Johnstons' home, tying up Mrs. Johnston with a rope.  Ledford v. Warden, Ga. Diagnostic & Classification

8

Prison, 818 F.3d 600, 608-09 (11th Cir. 2016).  A Georgia jury convicted Ledford

of murder, armed robbery, burglary, and kidnapping, and "unanimously

recommended imposition of the death penalty."  Id. at 614.  The Supreme Court of

Georgia affirmed Ledford's conviction and sentence on direct appeal.  Ledford v.

State, 439 S.E. 2d 917 (Ga. 1994).

After the United States Supreme Court denied Ledford's petition for

certiorari, Ledford v. Georgia, 513 U.S. 1085, 115 S. Ct. 740 (1995), Ledford

sought state habeas corpus relief in the Superior Court of Butts County, Georgia.

Ledford, 818 F.3d at 615.  That petition was denied on July 27, 1999, and the

Supreme Court of Georgia denied him a certificate of probable cause to appeal in

2001.  Id. at 620-21.  The United States Supreme Court thereafter again denied

certiorari.  Ledford v. Turpin, 534 U.S. 1138, 122 S. Ct. 1086 (2002).

Ledford then timely filed a 28 U.S.C. § 2254 petition in the federal district

court, in which he pled multiple claims.  On March 19, 2008, the district court

denied Ledford's § 2254 petition.  Ledford, 818 F.3d at 628.  On February 27,

2014, the district court denied reconsideration.  Id. at 631.  This Court affirmed the

denial of Ledford's § 2254 petition.  Id. at 608, 651.  This Court also denied

Ledford's petition for rehearing en banc.  Ledford v. Warden, Ga. Diagnostic &

Classification Prison, No. 14-15650 (11th Cir. May 18, 2016).  The United States

Supreme Court denied certiorari for a third time.  Ledford v. Sellers, ___U.S.___, __

9

S. Ct. __, No. 16-6444, 2017 WL 1199485 (Apr. 3, 2017).  The United States

Supreme Court subsequently denied Ledford's petition for rehearing.  Ledford v.

Sellers, __ U.S. ___, __ S. Ct. __, No. 16-6444, 2017 WL 2039266 (May 15, 2017).

## II.  STANDARD OF REVIEW

The standard governing a stay pending appeal is the same as the standard

applicable to a motion for a temporary restraining order.  A stay pending appeal is

appropriate only if the moving party establishes:  "(1) a substantial likelihood of

success on the merits; (2) that the [stay] is necessary to prevent irreparable injury;

(3) that the threatened injury outweighs the harm the [stay] would cause the other

litigant; and (4) that the [stay] would not be adverse to the public interest."

Gissendaner v. Comm'r, Ga. Dep't of Corr., 779 F.3d 1275, 1280 (11th Cir. 2015)

(quoting Wellons v. Comm'r, Ga. Dep't of Corr., 754 F.3d 1260, 1263 (11th Cir.

2014)).

## III.  STATUTE OF LIMITATIONS

The State argues, inter alia, that Ledford has not shown a substantial

likelihood of success on the merits because his § 1983 complaint is time-barred.

An untimely complaint cannot succeed on the merits.  Gissendaner, 779 F.3d

at 1280.  A § 1983 challenge to a state's method of execution is subject to the

statute of limitations governing personal injury actions in the state where the

challenge is brought.  Id.  Ledford brought his § 1983 action in Georgia, which has

10

a two-year statute of limitations period for such actions.  See id.; O.C.G.A. § 9-3-33.

The right of action for a method-of-execution challenge "'accrues on the later of the date on which' direct review is completed by denial of certiorari, 'or the date on which the capital litigant becomes subject to a new or substantially changed execution protocol.'"  Gissendaner, 779 F.3d at 1280 (quoting McNair v. Allen, 515 F.3d 1168, 1174 (11th Cir. 2008)).

The United States Supreme Court denied Ledford's petition for certiorari on direct review on January 9, 1995.  Ledford v. Georgia, 513 U.S. 1085, 115 S. Ct. 740 (1995).

In October 2001, Georgia adopted lethal injection as its method of execution. O.C.G.A. § 17-10-38(a) (stating "[a]ll persons who have been convicted of a capital offense and have had imposed upon them a sentence of death shall suffer such punishment by lethal injection"); Gissendaner, 779 F.3d at 1281. In March 2013, Georgia changed from using a single dose of FDA-approved pentobarbital to using a single dose of compounded pentobarbital.  See Gissendander, 779 F.3d at 1281.  In July 2013, Georgia's lethal injection secrecy act went into effect.  See id.; O.C.G.A. § 42-5-36(d).  This Court has squarely held that these changes made in 2013 are not substantial changes to Georgia's execution protocol.  Gissendaner, 779 F.3d at 1281-82; Wellons, 754 F.3d at 1263-64.  Thus,

11

Ledford's method-of-execution claim accrued in October 2001 and must have been filed by October 2003 to be timely. See Gissendaner, 779 F.3d at 1280. This means that Ledford's § 1983 complaint challenging lethal injection, filed on May 12, 2017, is over ten years too late.

In any event, Ledford's § 1983 complaint was not filed even within twenty-four months of that March 2013 change or the July 2013 secrecy act. Ledford also alleges that he has been taking gabapentin for approximately a decade. Thus, Ledford's § 1983 claims about the interaction of those two drugs—compounded pentobarbital and gabapentin—are filed too late as well.

"A time-barred complaint cannot justify a stay of execution, regardless of whether its claims have merit." Gissendaner, 779 F.3d at 1284; see also Henyard v. Sec'y, DOC, 543 F.3d 644, 647 (11th Cir. 2008). Because Ledford's § 1983 complaint was time-barred, he cannot show a substantial likelihood of success on the merits, and a stay of execution is not warranted.

## IV.  NO SUBSTANTIAL LIKELIHOOD OF SUCCESS ON THE MERITS

Alternatively, even if his claims were not time-barred, Ledford has failed to show that he is entitled to any relief at this time.

"Capital punishment, including capital punishment by lethal injection, generally is constitutional." Chavez v. Fla. SP Warden, 742 F.3d 1267, 1271 (11th Cir. 2014). Because "[s]ome risk of pain is inherent in any method of execution,"

12

the Eighth Amendment "does not demand the avoidance of all risk of pain in carrying out executions," particularly where the pain results "by accident or as an inescapable consequence of death." Baze v. Rees, 553 U.S. 35, 47, 50, 128 S. Ct. 1520, 1529, 1531 (2008) (plurality opinion)

Instead, to prevail on an Eighth Amendment challenge to a state's lethal injection protocol, the plaintiff must establish that the method of execution presents a risk that is "'sure or very likely to cause serious illness and needless suffering,' and give rise to 'sufficiently imminent dangers.'" Glossip v. Gross, 576 U.S. ___, __, 135 S. Ct. 2726, 2737 (2015) (quoting Baze, 553 U.S. at 50, 128 S. Ct. at 1531). A plaintiff must establish "an objectively intolerable risk of harm that prevents prison officials from pleading that they were subjectively blameless for purposes of the Eighth Amendment." Chavez, 742 F.3d at 1272 (quoting Baze, 553 U.S. at 50, 52, 61, 128 S. Ct. at 1531). This requires the plaintiff to show two things: "(1) the lethal injection protocol in question creates 'a substantial risk of serious harm,' and (2) there are 'known and available alternatives' that are 'feasible, readily implemented,' and that will 'in fact significantly reduce [the] substantial risk of severe pain.'" Id. (quoting Baze, 553 U.S. at 50, 128 S. Ct. at 1531-32, 1537).

13

A.    **Substantial Risk of Serious Harm**

Ledford does not challenge Georgia's method of execution in administering a single dose of five grams of compounded pentobarbital.  Rather, Ledford asserts an "as-applied" claim that, because he has taken gabapentin for a decade, that dose of pentobarbital, a mega-lethal dose, will not render him insensate quickly enough and that he will suffer serious pain during the execution.

With respect to the first required showing, Ledford's allegations and supporting documents do not establish a substantial risk of serious harm, much less a substantial likelihood of success on the merits of his claims.  As noted above, where an Eighth Amendment cruel and unusual punishment claim alleges the risk of future harm, the conditions presenting the risk must be "'<u>sure or very likely</u> to cause serious illness and needless suffering,' and give rise to 'sufficiently <u>imminent</u> dangers.'"  <u>Glossip</u>, 576 U.S. at __, 135 S. Ct. at 2737(quoting <u>Baze</u>, 553 U.S. at 50, 128 S. C.t at 1531) (quotation marks omitted); <u>Wellons</u>, 754 F.3d at 1265.  The factual allegations in Ledford's complaint and the supporting evidence do not establish that it is sure or very likely that Ledford will suffer serious injury or needless suffering during his execution.

We need not rely on the second requirement because Ledford has not carried his burden to show a substantial likelihood of success on his claim that, because Ledford has taken gabapentin for a decade, his execution by a lethal injection of

14

five grams of compounded pentobarbital is sure or very likely to cause serious illness and needless suffering.

Ledford admits that fourteen Georgia inmates have been executed with five grams of pentobarbital without incident and he submits the autopsies of some of them. Interestingly, Ledford expressly admits that he is not claiming that any of these inmates (in the autopsies) were sensate during their executions. At page fifteen, footnote ten of his complaint, Ledford states: "Mr. Ledford does not allege that any of these fourteen (14) inmates were conscious or sensate during their executions."

To distinguish his case from the fourteen Georgia executions that occurred without incident, Ledford claims that five grams of pentobarbital will not render him insensate quickly enough because of his history of taking gabapentin. The State's expert directly refutes that claim. For example, Dr. Jacqueline Martin testified that "the amount administered in the Georgia Department of Corrections' Execution Protocol, 5000 mg, is more than sufficient to carry out the execution without causing Plaintiff pain despite the prior administration of 1800 mg of gabapentin per day." And even Ledford's experts do not opine how quickly five grams of pentobarbital will or will not render Ledford insensate. The expert can say only that the use of gabapentin "will diminish the effect of pentobarbital," but the district court stressed, "how much, [Dr.] Berges never says." And the district

15

court pointed out Dr. Martin's observation that the research does "not show that gabapentin's inhibitory effect would survive the large, lethal dose of pentobarbital [used] . . . in judicial execution." The district court found that Ledford's experts did not demonstrate the substantial risk of severe pain that Ledford must demonstrate.[1]

## B.    Known and Available Alternatives

Alternatively, even assuming arguendo that Ledford has shown a substantial likelihood of success on the first requirement, as to the second requirement, Ledford's complaint fails to state a plausible claim for relief. As to Georgia's lethal injection method, Ledford does not even attempt to identify an alternative procedure or drug that is "feasible, readily implemented, and in fact significantly reduce[s] a substantial risk of severe pain." Glossip, 576 U.S. at ___, 135 S. Ct. at 2737 (quoting Baze, 553 U.S. at 52, 128 S. Ct. at 1532). Ledford's complaint includes no allegations that: (1) there is an alternative drug that will substantially reduce the risks he identifies with compounded pentobarbital; (2) any alternative means of acquiring that alternative drug; or (3) an alternative method of lethal

---

[1]We also reviewed the declaration of Dr. Mark A. Edgar, who reviewed fourteen autopsies, but his opinion about the risk of pain is prefaced with the condition that "if the person were conscious" or "if the prisoners were aware." Dr. Edgar never opines how long it would take for an inmate who received a five-gram injection of pentobarbital to become insensate. The opinion of Dr. Joel B. Zivot about the risk of pain is also based on the caveat that "[i]f any inmate was aware or sensate during the process."

injection that would substantially reduce the risk Ledford identifies based on his history of taking gabapentin.

For the above reasons, in addition to being time-barred, Ledford's complaint fails to state a plausible claim for relief. Because Ledford has not shown a substantial likelihood of success on the merits of his challenge to the lethal injection protocol, the motion for a stay is denied. See Gissendaner, 779 F.3d at 1283.

## V.  FIRING SQUAD CLAIM

We also agree with the district court that Ledford has not alleged sufficient facts to render it plausible that a firing squad is a feasible and readily implemented method of execution in Georgia that would significantly reduce a substantial risk of severe pain. The Georgia legislature is free, within the parameters established by the United States Constitution, to choose the method of execution it deems appropriate. Execution by lethal injection has been ruled constitutional. Boyd v. Warden, Holman Corr. Facility, ___ F.3d ___, No. 15-14971, 2017 WL 1856071, at *8 (11th Cir. May 9, 2017); Arthur v. Comm'r, Ala. Dep't of Corr., 840 F.3d 1268, 1316 (11th Cir. 2016). Having authorized a constitutional method of execution,

Georgia "is under no constitutional obligation to experiment with execution by . . .

firing squad." Boyd, 2017 WL 1856071, at *1; Arthur, 840 F.3d at 1315-18.[2]

In fact, Ledford's own expert, Dr. James Williams, a trauma doctor with

expertise in firearms, avers:  "At the present time, lethal injection of pharmacologic

agents dominates the field, and, in my opinion, for good reason:

when available and performed appropriately, lethal injection provides us with

arguably the quickest and most humane method of deliberately ending life."  While

Dr. Williams opines that "gunshot wounding is—if properly carried out—also an

effective means of accomplishing" death, Dr. Williams never describes gunshot

wounding as a humane method, much less a more humane or the most humane

method.

As the Supreme Court has recognized, "[t]he firing squad, hanging, the

electric chair, and the gas chamber have each in turn given way to more humane

methods [of execution], culminating in today's consensus on lethal injection."

---

[2]Contrary to Ledford's claims, the Eighth Circuit's decision is not inapposite to our Circuit's precedent.  In McGehee v. Hutchinson, the Eighth Circuit vacated the district court's stay of execution, denied a stay, and stated "we concur with the Eleventh Circuit that the State must have access to the alternative and be able to carry out the alternative method relatively easily and reasonably quickly."  McGehee v. Hutchinson, 854 F.3d 488, 488 (8th Cir. 2017) (en banc) (per curiam) (citing Arthur v. Comm'r, Ala. Dep't of Corr., 840 F.3d 1268, 1300 (11th Cir. 2016)), cert. denied, 137 S. Ct. 1275 (2017).  The Eighth Circuit concluded that the petitioner had not shown "a significant possibility that use of a firing squad is readily implemented and would significantly reduce a substantial risk of severe pain."  Id. at 488.
    The Sixth Circuit did affirm a district court's stay in a 2-1 opinion over a dissent, but the Sixth Circuit has now voted that case en banc. In re Ohio Execution Protocol, 853 F.3d 822 (6th Cir. 2017), reh'g en banc granted, opinion vacated, No. 17-3076, 2017 WL 1457946 (6th Cir. Apr. 25, 2017), withdrawn from bound volume (May 5, 2017).  In any event, both the Sixth and Eighth Circuit cases were about midazolam, not pentobarbital which Georgia uses.

Baze, 553 U.S. at 62, 128 S. Ct. at 1538; see also id. at 42, 128 S. Ct. at 1526-27 ("A total of 36 States have now adopted lethal injection as the exclusive or primary means of implementing the death penalty, making it by far the most prevalent method of execution in the United States."); Furman v. Georgia, 408 U.S. 238, 296-97, 92 S. Ct. 2726, 2756 (1972) (Brennan, J., concurring) ("Our practice of punishing criminals by death has changed greatly over the years.  One significant change has been in our methods of inflicting death.  Although this country never embraced the more violent and repulsive methods employed in England, we did for a long time rely almost exclusively upon the gallows and the firing squad.  Since the development of the supposedly more humane methods of electrocution late in the 19th century and lethal gas in the 20th, however, hanging and shooting have virtually ceased.").

In any event, Ledford asserted this firing squad claim well beyond the two-year statute of limitations governing § 1983 claims in Georgia and thus his firing squad claim is untimely.

## VI.  EQUITABLE RELIEF

As an alternative and independent ground, we deny Ledford's motion for a stay because a stay of execution is an equitable remedy, and Ledford has not carried his burden to demonstrate entitlement to that equitable relief.

19

A stay is an equitable remedy not available as a matter of right, and before a court grants a stay, it must consider "the relative harms to the parties," "the likelihood of success on the merits," and "the extent to which the inmate has delayed unnecessarily in bringing the claim." Nelson v. Campbell, 541 U.S. 637, 649-50, 124 S. Ct. 2117, 2126 (2004). We consider the relative harms to the parties by balancing the competing interests of Ledford and Georgia. Crowe v. Donald, 528 F.3d 1290, 1292 (11th Cir. 2008). "A defendant's interest in being free from cruel and unusual punishment is primary; however, the State's interest in effectuating its judgment remains significant." McNair, 515 F.3d at 1172. Victims of crime also "have an important interest in the timely enforcement of a sentence." Hill v. McDonough, 547 U.S. 573, 584, 126 S. Ct. 2096, 2104 (2006). "[L]ike other stay applicants, inmates seeking time to challenge the manner in which the State plans to execute them must satisfy all of the requirements for a stay, including a showing of a significant possibility of success on the merits." Id.

"Given the State's significant interest in enforcing its criminal judgments, there is a strong equitable presumption against the grant of a stay where a claim could have been brought at such a time as to allow consideration of the merits without requiring entry of a stay." Nelson, 541 U.S. at 650, 124 S. Ct. at 2126 (citations omitted). In several decisions, this Court has refused to grant a dilatory stay sought on the eve of an execution. See, e.g., Crowe, 528 F.3d at 1294; Diaz v.

20

McDonough, 472 F.3d 849, 851 (11th Cir. 2006); Hill v. McDonough, 464 F.3d 1256, 1259-60 (11th Cir. 2006).

Even if not barred by the statute of limitations, Ledford's claims are barred because he has not timely made them, given he waited until five days before his execution. In any event, in our balancing of the hardships and equitable relief, we must take into account the fact that the State and the relatives of Ledford's victims have a strong interest in the finality of the criminal judgments and in seeing lawfully imposed sentences carried out in a timely manner.

Our decision in Jones v. Allen provides guidance here. 485 F.3d 635 (11th Cir. 2007), cert. denied, 550 U.S. 930, 127 S. Ct. 2160 (2007). In that case, the inmate Jones, facing an imminent execution, filed a § 1983 civil action challenging the three-drug protocol in Alabama that had been in existence since 2002, but Jones waited until 2006 to file his civil action. Id. at 636-38. This Court concluded that Jones's delay "leaves little doubt that the real purpose behind his claim is to seek a delay of his execution, not merely to effect an alteration of the manner in which it is carried out." Id. at 640 (quoting Harris v. Johnson, 376 F.3d 414, 418 (5th Cir. 2004)). Similarly, in the instant case, Georgia has used lethal injection with a single dose of pentobarbital for years, and Ledford has taken gabapentin for ten years. Only five days before his execution did Ledford bring his

21

concern about the interaction of these two drugs.  Ledford has failed to show any equitable relief is warranted in these circumstances.

Under all the particular facts and circumstances of this case, Ledford has not shown that he has met the equitable requirements for a stay against the State.

## VII.  CONCLUSION

After review, this Court denies Ledford's motion for a stay of execution because (1) Ledford's § 1983 claims are time-barred; (2) alternatively, Ledford has not shown a substantial likelihood of success on his § 1983 claims; and (3) in any event, equitable considerations, including Ledford's delay in bringing a § 1983 complaint and the State's and the victims' interests in the finality and timely enforcement of valid criminal judgments, do not warrant the entry of a stay of Ledford's execution for this 1992 murder.[3]

**EMERGENCY MOTION FOR A STAY DENIED.**

---

[3]Plaintiff-Appellant's Petition for Initial Hearing En Banc and for a stay of execution from the en banc court remains pending.

JORDAN, Circuit Judge, concurring:

I join Parts I–III of the majority opinion and concur in the denial of a stay. Because Mr. Ledford's execution protocol claim is untimely under Eleventh Circuit precedent, I do not find it necessary to address the other grounds set forth by the majority.

WILSON, Circuit Judge, dissenting to the denial of hearing en banc, joined by MARTIN, ROSENBAUM, and JILL PRYOR, Circuit Judges:

There are over six hundred people on death row in Florida, Georgia, and Alabama. The Framers of the Constitution determined that such individuals cannot be subjected to torturous, inhumane deaths. Our decision in *Arthur*,[1] however, has all but overturned the Framers' determination. Under *Arthur*, even if a death row prisoner in Florida, Georgia, or Alabama faces an inhumane method of execution, the prisoner has no real recourse.

*Arthur* imposed a "de facto ban on [relief from a torturous, inhumane death] by adopting method-of-execution rules that lead to litigation gridlock." *See Baze v. Rees*, 553 U.S. 35, 71, 128 S. Ct. 1520, 1542 (2008) (Alito, J., concurring). To obtain relief from an inhumane method of execution, a death row prisoner must identify a known-and-available execution alternative. Because lethal-injection drugs are both scarce and shrouded in secrecy, prisoners are having to turn to death by firing squad and other non-drug alternatives to meet this requirement. But under *Arthur*, an execution alternative is available only if it is state authorized, and neither Florida, Georgia, nor Alabama currently authorize any non-drug alternatives other than electrocution (a clearly problematic method of execution).

---

[1] *Arthur v. Comm'r, Ala. Dep't of Corrs.*, 840 F.3d 1268 (11th Cir. 2016), *cert. denied sub nom. Arthur v. Dunn*, 580 U.S. ___, 137 S. Ct. 725 (2017).

So, the hundreds of prisoners sentenced to death in those states face a de facto ban on relief from a torturous, inhumane death.  That defies the intent of the Framers.

J.W. Ledford's case presents an opportunity for our court to revisit *Arthur*, and for the reasons discussed more fully in my dissent in *Arthur* and my concurrence in *Boyd*,[2] I strongly believe our court should do so.

I respectfully dissent to the denial of hearing en banc.[3]

---

[2] *Boyd v. Warden, Holman Corr. Facility*, ___ F.3d ___, No. 15-14971 (11th Cir. May 9, 2017).

[3] I believe hearing en banc is warranted despite the panel's conclusion that Ledford's claim is untimely.  First, regardless of that conclusion, this case implicates an issue of "exceptional importance" in our circuit.  *See* Fed. R. App. P. 35.  *Arthur*, in my view, was wrongly decided, and the panel relied on *Arthur* as a basis for denying Ledford's claim.  "We have a responsibility to interpret the law correctly," which requires an en banc hearing to correct *Arthur* and the panel's reliance on it.  *See McCarthan v. Dir. of Goodwill Indus.-Suncoast, Inc.*, 851 F.3d 1076, 1099 (11th Cir. 2017) (en banc).  Second, I am not persuaded that the panel's timeliness conclusion is correct.  The panel says that Ledford should have filed his claim within two years of Georgia changing its lethal-injection protocol.  That might be true if Ledford was alleging that the protocol is unconstitutional as a general matter.  But that is not what he alleges.  He argues that the protocol is inhumane as applied to him because he has a "unique medical condition," and he alleges that the condition arose within the past two years.  *See Gissendaner v. Comm'r, Ga. Dep't of Corrs.*, 803 F.3d 565, 569 n.1 (11th Cir. 2015) (per curiam).  This is not a case, then, where the claim is "untimely because [it] rel[ies] on factual conditions that have not changed in the past" two years.  *See Gissendaner v. Comm'r, Ga. Dep't of Corrs.*, 779 F.3d 1275, 1281 (11th Cir. 2015) (per curiam); *Siebert v. Allen*, 506 F.3d 1047, 1049–50 (11th Cir. 2007) (per curiam) (concluding that a prisoner's method-of-execution claim was timely because it was an as-applied challenge that "derive[d] from [a] recent [medical] diagnosis").  Third, Ledford's initial federal habeas petition was resolved just yesterday, so I do not believe that he can be characterized as improperly delaying this action.  *See Ledford v. Sellers*, No. 16-6444 (U.S.S.C. May 15, 2017).

25

JILL PRYOR, Circuit Judge, dissenting to the denial of hearing en banc, joined by WILSON, MARTIN, and ROSENBAUM, Circuit Judges:

I agree in full with Judge Wilson's dissent in *Arthur*,[1] his concurrence in *Boyd*,[2] and his dissent today. The Eighth Amendment guarantees death row inmates the right to humane treatment, but by effectively foreclosing all method-of-execution challenges, the Court has signaled that this right does not follow inmates to the execution chamber. Unfortunately, the Court's jurisprudence on the substance of method-of-execution challenges is not the only way in which we have systematically closed and locked the courthouse doors on inmates under death sentences. We are also locking the courthouse doors based on an erroneous interpretation of the statute of limitations applicable to method-of-execution challenges.[3]

Georgia's lethal injection protocol currently provides that inmates shall be executed with a lethal dose of compounded pentobarbital. J.W. Ledford raises an as-applied challenge under 42 U.S.C. § 1983 to the use of this protocol in his execution. He alleges that the cumulative effect of a medication he has taken over the last several years has altered his brain chemistry such that pentobarbital will

---

[1] *Arthur v. Comm'r, Ala. Dep't of Corr.*, 840 F.3d 1268 (11th Cir. 2016), *cert. denied sub nom. Arthur v. Dunn*, 137 S. Ct. 725 (2017).

[2] *Boyd v. Warden, Holman Corr. Facility*, No. 15-14971, __ F.3d __, 2017 WL 1856071 (11th Cir. May 9, 2017).

[3] Because this case presents an as-applied challenge to Georgia's method of execution, I do not address the Court's statute of limitations jurisprudence as it pertains to *per se* method-of-execution challenges.

lack the capacity to anesthetize him while it stops the functioning of his central nervous system. As a result, Mr. Ledford alleges, if he is executed using compounded pentobarbital he is very likely to endure excruciating pain and suffering akin to drowning in his own saliva.

The panel began by stating hornbook law: a challenge brought pursuant to § 1983 is subject to the statute of limitations governing personal injury actions in the state in which the challenge is brought. *Ledford v. Comm'r, Ga. Dep't of Corr.*, No. 17-12167, __ F.3d __, 2017 WL 2104682, at *2 (11th Cir. May 15, 2017). In Georgia, this statute of limitations is two years. *See id.* Because this Court has held that "a method of execution claim accrues on the later of the date on which state review is complete"—for Mr. Ledford, January 1995—"or the date on which the capital litigant becomes subject to a new or substantially changed execution protocol"—according to the panel, October 2001—the panel concluded that Mr. Ledford's claim was time barred. *McNair v. Allen*, 515 F.3d 1168, 1174 (11th Cir. 2008); *Ledford*, 2017 WL 2104682, at *2 (quoting *Gissendaner v. Comm'r, Ga. Dep't of Corr.*, 779 F.3d 1275, 1280 (11th Cir. 2015) (quoting *McNair*, 515 F.3d at 1174)).

The panel's analysis is simple enough. Indeed, it's too simple. *McNair*'s accrual rule does not control in an as-applied challenge such as Mr. Ledford's, where there are allegations that Mr. Ledford's brain chemistry has changed over

27

time such that he is now very likely to suffer an injury that he would not have experienced within two years of October 2001.  Rather, the applicable rule is this Circuit's general rule that "the statute of limitations does not begin to run until the facts which would support a cause of action are apparent or should be apparent to a person with a reasonably prudent regard for his rights."  *Mullinax v. McElhenney*, 817 F.2d 711, 716 (11th Cir. 1987) (alteration and internal quotation marks omitted); *see McNair*, 515 F.3d at 1173 (explaining that *Mullinax* "has long been the law of this Circuit" for § 1983 actions).  By way of illustration, in *Siebert v. Allen*, decided the year before *McNair*, we concluded that an "as-applied" § 1983 challenge to Alabama's lethal injection protocol was timely because the factual predicate for that claim— Mr. Siebert's diagnosis with pancreatic cancer and hepatitis C—occurred shortly before he filed his amended complaint.  506 F.3d 1047, 1048-49 (11th Cir. 2007).  We said that Mr. Siebert's "as-applied" claim was timely because it "derive[d] from his recent diagnosis."  *Id.* at 1049-50.[4]

It is this general rule from *Mullinax*, seen in action in *Siebert*, that should have been applied here.  Mr. Ledford alleged that for a number of years he has been taking medication for chronic nerve pain, his dosage had been increasing, and his long-term exposure to that medication has altered his brain chemistry such that

---

[4] More recently, *Gissendaner*, cited by the panel, suggested that a recent change in an inmate's medical condition could affect our statute of limitations analysis, though it denied Ms. Gissendaner relief because she had failed to allege that there was a recent change in her medical condition.

the State's use of pentobarbital in his execution is very likely to cause him to experience unbearable pain and suffering.  It is not at all apparent from the face of Mr. Ledford's May 11, 2017 complaint that his as-applied claim accrued more than two years prior to that filing.  *See Jones v. Bock*, 549 U.S. 199, 215 (2007) (noting that dismissal on the affirmative defense of statute of limitations is appropriate only "if the allegations, taken as true," show that relief is time-barred).  Admittedly, we cannot tell from the allegations of Mr. Ledford's complaint that his claim *is* timely.  But that is not the standard we are bound to apply.

By holding Mr. Ledford's as-applied challenge time barred, the panel locks the courthouse doors on him and on virtually any other death row inmate who may assert an as-applied challenge to an execution protocol in this Circuit.  This defies common sense, logic, our case law, and the dictates of the Eighth Amendment.  For these reasons and the reasons Judge Wilson has articulated in his dissent, I believe we should have heard Mr. Ledford's case en banc.  I respectfully dissent.